Argued Feb. 20, decided March 14, rehearing denied April 4, 1911.

# DALTON *v.* KELSEY.

[114 Pac. 464.]

WATERS—IRRIGATION DITCHES—ACTIONS—DEFENSES.

1. Defendant agreed with plaintiff that plaintiff might make a ditch across defendant's land to convey water for plaintiff's crops, defendant to have the right to carry his own water in the ditch, and to use plaintiff's water only when not required by plaintiff. *Held,* in an action for depriving plaintiff's crops of the necessary water, that it was no defense that plaintiff did not have a valid appropriation of the water claimed by him, so long as it was not defendant's.

LIMITATION OF ACTIONS—ACTION ON THE CASE—IRRIGATION RIGHTS.

2. Where plaintiff and defendant had an agreement whose express purpose was to settle and establish the respective rights of the parties to the water and ditches therein mentioned, an action by plaintiff for interfering with his rights thereunder, in that defendant entered upon the ditch upon his own land and diverted water so that it failed to reach the lands of plaintiff, but did not enter upon the plaintiff's land, is an action on the case, and is barred in two years under Section 8, subd. 1, L. O. L., and is not an action on the contract or for trespass, which are barred in six years by Section 6, subd. 1, L. O. L.

JUDGMENT—BAR OF JUDGMENT IN ANOTHER ACTION.

3. The decree in a former action over the rights of the parties in a certain ditch determined that the present defendant had a prior right to the water occupying four feet in width of the ditch, and that the present plaintiff and his associates were entitled to any additional water that the ditch would carry after defendant's appropriation was used, that defendant could divert at any place the quota of water belonging to him, if that amount came down from P. river, and if, in the

use of his portion of the water the bottom of the ditch at the D. box was raised necessarily so high that no water went down to plaintiff the defendant was not liable, that the defendant could not interrupt the flow of water from the H. slough through the D. box, except when such flow was equal to the capacity of the ditch. *Held,* that the former judgment so far as it affected the rights of the parties to the water in the ditch, and to have the same water flow in the ditch described in the agreement in the present case, which was a continuation of the other ditch and also carried water from other sources, was conclusive, but gave defendant no right to unnecessarily divert more than his share of the water nor to cut plaintiff's ditches to irrigate his pasture land after his agreement only to use the water for that purpose when plaintiff did not require it.

WATERS—IRRIGATION—RIGHTS OF APPROPRIATOR—INSTRUCTIONS.

4. In an action for damages for diverting water from an irrigating ditch, an instruction that the appropriator does not own the water which he had appropriated, but has the right to use the same, and that only after he has made use of it any quantity thereof which passes below his premises is open to the use of others as their rights appear, and that he cannot assert sovereignty over such water after it has passed the point where it is available to his usage, and that it is his duty to use his appropriation in irrigating his premises as to do the least harm to other users is proper, and not in conflict with a former decree which adjudicates that the defendant, as a prior appropriator, was entitled to the use of four feet of water, but that this was subject to the qualification that such use must be necessary at the time.

TRIAL—PROVINCE OF JURY—CONSTRUCTION OF FINDINGS.

5. In an action for damages for diverting water from an irrigating ditch, an instruction that, where the court in a former action had found certainly upon any point that had arisen in this action, its finding must control, and was conclusive upon the parties thereto, is erroneous, as leaving to the jury the construction of the findings of the court, which the court should have itself construed and explained to the jury.

TRIAL—INSTRUCTIONS—DEFECTS CURED BY OTHER INSTRUCTIONS.

6. In an action for damages for diverting water from an irrigating ditch, where it appeared that defendant had the prior right to use four feet of the water flowing through the ditch, an instruction that, if the defendant caused damage to the plaintiff by a disregard of plaintiff's right to use water therefrom, the defendant would be liable therefor, was misleading for failure to mention such prior right, although the right was expressly recognized in other instructions.

WATERS—IRRIGATION—RIGHTS OF APPROPRIATION.

7. In an action for damages for diverting water from an irrigating ditch, an instruction that if by opening the bottom of a dam in a box, whereby the water could run through to plaintiff, and, if by turning in enough water additional at the head of the ditch in N. P. river, he could have procured a sufficient volume of water to have satisfied his needs, and thus avoided any injury to plaintiff, it was defendant's duty to have done so, was not erroneous, where the evidence showed that there was an abundant supply of water at the head of the ditch for all parties interested.

From Baker: WILLIAM SMITH, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is an action at law by James Dalton against L. S. Kelsey to recover damages caused by an alleged diversion of irrigating water from a ditch owned in common by plaintiff, defendant, and others, by which unlawful diversion plaintiff claims that his crops for the years 1903, 1904, 1905, and 1908 were destroyed or injured. There is a separate cause of action for each year. The complaint alleges, in substance, that plaintiff is the owner of certain land, therein described, which is totally unproductive without artificial irrigation, but that by the aid of water is capable of producing large and valuable crops of alfalfa, wheat, and other grain; that defendant is the owner of certain land situated west of plaintiff's land; that on or about the —— day of 189—, plaintiff and defendant entered into an oral agreement, whereby it was agreed that plaintiff should have the right to construct and use a certain ditch from a point at or near the south line of section 6 on defendant's lands through and across the land to and upon plaintiff's land for the purpose of conveying to the land of the latter the waters of a certain natural water course, known as Warm Springs branch, together with the waters then flowing thereto from what is known as the Hutchinson Slough and North Powder River. It was further agreed that defendant should have the use of the ditch only to the extent of conveying therein, to his own land, his certain portion of water flowing to said point from North Powder River, and to use all the waters of the ditch only at such times as plaintiff was not using or requiring their use; that such use of the water by defendant was to be for irrigating his pasture land along the course of the ditch, and not otherwise; that defendant would not divert any water flowing through the ditch, except as hereinabove

alleged; that he would at all times allow plaintiff's waters to flow uninterruptedly in the ditch through defendant's lands to and upon plaintiff's lands; that defendant would not at any time interfere therewith nor dam plaintiff's waters flowing therein; and that defendant would not use the waters when plaintiff was using or requiring their use, excepting as hereinabove alleged; that thereafter and prior to the —— day of ——, 1900, in pursuance of the oral agreement and in conformity therewith, plaintiff constructed the ditch described, and conveyed water through the same to his lands; and that defendant had the use thereof as agreed, the ditch being called the "Dalton Ditch." Thereafter, on the —— day of ——, 190—, an agreement in writing was made and entered into by plaintiff and defendant for the purpose, among other things, of defining certain rights to be thereby granted to other persons to certain enlargements of the ditch to be thereafter made. It is further alleged that up to the time of this agreement the ditch as constructed and used, under and in pursuance of the oral agreement, was known as a three-foot ditch, and that by the written agreement it was acceded that P. L. Smith, Charles Dougherty, and L. Dougherty, as Dougherty Bros., parties to the agreement, should enlarge the ditch and make the same a five-foot ditch, and to have the enlargement completed on or before the 1st day of May, 1901. It was further provided that, if the ditch was so enlarged according to the agreement, P. L. Smith should have a one-fourth interest therein, and the Dougherty Bros. should have a one-fourth interest in the ditch, and that plaintiff should have a one-half interest therein. It was also covenanted that defendant should have the right to irrigate from this ditch his pasture land along the ditch, provided that he would use the water only when it was not being used or required for irrigation by plaintiff or P. L. Smith or the Dougherty Bros., and that defendant

should have the right to convey his own water from other ditches through the Dalton Ditch and to use the same to irrigate his pasture land, the water contemplated in the written agreement being defendant's portion of the water flowing to the ditch from North Powder River; that in all other respects, excepting as hereinabove stated with reference to the written agreement, the respective rights, duties, and obligations of plaintiff and defendant relative to the Dalton Ditch and use thereof, and the terms and conditions of the oral agreement have at all times herein mentioned, since the date of the oral agreement, remained unchanged. The enlargement of the ditches provided in the written contract was fully performed according to the terms thereof, and all covenants and conditions on plaintiff's part have been fully kept and performed. At all times herein mentioned the ditch was the only source or means whereby plaintiff could procure water for irrigating his lands, and it carried and conveyed abundant and sufficient water for irrigating plaintiff's lands, together with the water which defendant was entitled to use under the agreements.

Defendant answered, admitting the execution of the written agreement and the title of plaintiff to the land described in the complaint, and denying every other allegation. For a further and separate answer defendant alleged that the written agreement was a full and complete final settlement and adjudication of all the rights and interests of each party to the agreement of all water rights, ditches, and ditch rights mentioned in plaintiff's complaint; that by the terms thereof all prior agreements were merged and ceased to exist; that the written agreement was intended to and did take the place of all prior agreements; and that any use that defendant made of any of the waters or ditches mentioned in the complaint was made on his own land and in accordance with the terms of the written agreement. For a second separate defense

defendant alleged that in a suit pending in the circuit court for the State of Oregon, for Baker County, in which J. D. McPhee, P. L. Smith, and James Dalton were plaintiffs, he, James Dalton, plaintiff in this suit, and L. S. Kelsey, defendant herein, was defendant therein, and in which the court had jurisdiction of the parties and of the subject, findings of fact were made and a decree rendered therein of date on or about May 2, 1906, which decree became and is now final, and by which the rights of this defendant and of James Dalton were ascertained, adjudged, and decreed as to what is known as the Kelsey-Wilson Ditch and the water rights thereof, and that by decree Kelsey, the defendant herein, was decreed to be the owner of a first, prior, and exclusive right to the full amount of the ditch to the extent of four feet in width and to its full capacity thereof, and, among other things, it was decreed and determined that what is known as the "Dalton Box" should be kept and maintained in its then position, without let or hindrance, and this defendant pleads such decree, and the findings of fact therein, as a defense to plaintiff's complaint and the acts therein alleged.

The reply put in issue the new matter in the answer. Plaintiff had judgment, and defendant appeals.

REVERSED.

For appellant there was a brief and oral arguments by *Mr. Charles A. Johns* and *Mr. Thomas H. Crawford.*

For respondent there was a brief over the names of *Mr. Gustav Anderson* and *Mr. John L. Rand,* with an oral argument by *Mr. Anderson.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. It is claimed that the complaint does not state facts sufficient to constitute a cause of action, because it does not show that plaintiff was the appropriator of any water

or had any right to divert water from the ditch. If this were an action between persons claiming the same water by prior appropriation, there would be merit in the objection, but here plaintiff claims the right to use the Kelsey-Dalton Ditch by virtue of an agreement with defendant, and if he could procure the water, as he alleges that he could, his source of title was no concern of defendant so long as he did not assume the right to take that which defendant had appropriated. The right of defendant to use the ditch to the extent of his appropriation is conceded. The gist of this action is that defendant has exceeded the extent of that appropriation and unlawfully appropriated other water, the right to use which he had by express agreement conceded to plaintiff.

2. It is also objected that the first, second, and third causes of action are barred by the statute of limitations, and in our opinion this is well taken. This is essentially an action for trespass on the case, and not on contract. It is true that plaintiff's title rests in contract. Whatever the original understanding between the parties may have been, it was finally settled and fixed by the written agreement of October, 1900. It is a document executed and acknowledged with all the formalities of a conveyance of real property, and recites that its purpose is "to forevermore settle and establish the respective rights of said parties" in and to the water and ditches therein mentioned. Its very object was to make certain, clear, and permanent the oral agreements and understandings theretofore existing between the parties, and they were merged therein. There is no covenant on the part of Kelsey to abstain from doing or to do any act with reference to Dalton's share in the ditch or the water running therein. Each party mutually grants to the other certain rights and reserves to himself certain rights. Under such circumstances, case is the appropriate remedy and the action is *ex delicto*: *Lindeman* v. *Lindsey*, 69 Pa. 93

(8 Am. Rep. 219). Neither can the present action be construed as an action for trespass. Kelsey is not charged with interfering with the operation of the ditch upon plaintiff's land. It is imputed that he entered upon the ditch upon his own land and diverted the water so that it failed to reach the lands of plaintiff. In such contingency the remedy is by action on the case. Farnham, Water Rights, § 483. The significance of the foregoing observation is this: Were this an action on the contract or for trespass, the statute of limitations would run in six years. Section 6, subd. 1, L. O. L. An action on the case is barred in two years. Section 8, subd. 1, L. O. L. It follows, therefore, that the first three causes of action are barred by the statute, and need not be further considered.

3. The decree rendered by the circuit court in the case of *McPhee* v. *Kelsey,* 44 Or. 193 (74 Pac. 401: 75 Pac. 713), was not a bar to this action. The litigation in that case was in regard to the rights of the parties in the Kelsey-Wilson Ditch, and is in no wise in derogation of the rights of the parties in the present action. The agreement herein was not necessary to the determination of the rights of the parties in that action either as a matter of pleading or proof. In brief, the court found that in the year 1888 plaintiffs in that action or their grantors, including plaintiff in this action, entered into an agreement with Kelsey, whereby they were to enlarge the Kelsey-Wilson Ditch and double its capacity so as to make it an eight-foot ditch, as far as the Wilson tap, and from there on to extend it south to the Warm Spring branch, making it of sufficient capacity to carry the volume of water admitted at its head, the enlargement to be subject to the rights of Kelsey and Wilson held in the original ditch; that prior to such enlargement Kelsey had extended the ditch south to the south line of his claim and had used water therefrom at a point known as the "Dalton

Box"; that Kelsey had a prior right to four feet in width of the capacity of the original ditch, irrespective of the enlargement; that from Hutchinson Slough south the ditch had not been enlarged sufficiently to carry but a small portion of the water which the ditch above would bring to it; that the contract of 1888 did not contemplate any new or additional use that would give plaintiff equal rights with defendant Kelsey in the four feet of water originally appropriated by him. The ditch described in the agreement at bar begins at the Warm Springs Creek, and is a continuation of the ditch described in the above findings. It will be seen that the principal contention in that case was that Dalton and his associates were entitled to an equal right with Kelsey in all the waters that flowed through the Kelsey-Wilson Ditch.

The decree offered in evidence adjudicates finally these matters: (1) That Kelsey had a prior right to the water occupying four feet in width of the enlarged ditch; (2) that plaintiff in this case and his associates were entitled to any additional water that the ditch would carry after Kelsey's appropriation was exhausted; (3) that Kelsey could divert at the Dalton Box or at any other place the quota of water belonging to him if that amount came down from Powder River; (4) if, in the use of his portion of the water, the bottom of the ditch at the Dalton Box was raised necessarily so high that no water went down to Dalton, Kelsey was not liable; (5) that Kelsey should not interrupt the flow of water from Hutchinson Slough, through the Dalton Box, except when such flow was equal to the capacity of the ditch. From this we take it that, if there should happen to be a scarcity of water from Powder River, Kelsey could not make up the deficiency by diverting the Hutchinson Slough water belonging to Dalton. The pleadings in the former case are not in evidence, but we assume from the opinions found in 44 Or. 193 (74 Pac. 401: 75

Pac. 713), and 45 Or. 290 (78 Pac. 224), that the findings and decree cover all the issues in the case. While we do not hold with appellant that the whole agreement in regard to this ditch is merged in the judgment in *McPhee* v. *Kelsey,* we do hold that so far as that decree affects the rights of the parties to the water in the Kelsey-Wilson Ditch, and therefore incidentally their rights to have the same water flow in the ditch described in the agreement in the case at bar, it is conclusive; but, as we have already remarked, that decree did not give Kelsey any right to unnecessarily divert more than his share of the water nor to cut plaintiff's ditches to irrigate his pasture land after his agreement only to use the water for that purpose when plaintiff did not require it. The evidence as to the capacity of the original Kelsey-Wilson Ditch and the Kelsey-Dalton Ditch is exceedingly unsatisfactory; the diversion apparently being made in reference to width of the ditch rather than the volume of water that would flow through it, so that, when witnesses testify that there is "plenty of water" at the Dalton Box to answer the needs of both Kelsey and plaintiff, their statements savor more of an expert opinion than of a narrative of facts. However, there was some evidence tending to show that Kelsey was taking more than his share of the water and other evidence tending to show that he cut the ditch to irrigate his pasture land when Dalton needed the water for his crops. We do not feel, therefore, that the verdict on the last cause of action was without evidence to support it.

4. Exception is taken to certain instructions of the court, and these will now be considered. The first instruction is as follows:

"I instruct you that the prior appropriator of the waters of the stream for irrigating purposes has the right to use the same to the extent of his necessities for such purposes without let or hindrance from other users

thereof, but that his use thereof must be economical and strictly in accordance with his needs, and not otherwise. It is his duty so to use his said appropriation in irrigating his premises as to do the least harm to other users, and so to handle the water upon his premises as will make the waters of a stream of the best use to the community. Every ditch should be so handled as to satisfy the users therefrom if possible. Any method of irrigation which is wasteful or extravagant cannot be upheld by the courts and is an improper use thereof, when others need the water for like use. It is a rule of law that the appropriator does not own the water which he has appropriated but he does own the right to use the same, and that only. After he has made use of it, any quantity thereof which passes below his premises is open to the use of others as their rights appear, and the prior appropriator thereof cannot assert sovereignty over such water after it has passed the point where it is available to his usage. These rules apply to plaintiff and defendant in this case alike."

We think this instruction properly states the law, and that it is not in conflict with the decree of 1906. That decree, it is true, adjudicates that Kelsey is entitled, as a prior appropriator, to the use of four feet of water, but this must be subject to the qualification that such use must be necessary at the time. At some seasons of the year one-fourth of that amount might be all that would be required, and at other seasons the whole might not be sufficient. Now to allow defendant to divert four feet of water upon his own land, when one foot would be amply sufficient, would be clearly unjust and contrary to that sound policy of the law, which does not recognize actual ownership in running water, but merely the right to beneficial use of it.

The second instruction objected to we think correctly states the law, and does not infringe upon the rights of defendant as defined by the decree. The courts in all previous litigation between parties, as in this case, have recognized the difficulty of laying down any fixed rule

for the diversion of this water at any particular time which would do exact justice to all parties. It is evident that all parties to this litigation are more anxious to inconvenience and annoy each other than they are to use their water to the best advantage, and that they will probably continue to litigate so long as their fields produce crops sufficient to pay the expenses. Nothing but placing a disinterested commissioner in charge of this ditch and keeping him there at the expense of the parties concerned will ever stop this litigation and it is doubtful if that course will have the desired effect.

5. Instruction No. 4, objected to by appellant, is as follows:

"I also instruct you that the findings of fact found by this court in that suit wherein this plaintiff and others were plaintiffs, and Mr. Kelsey was defendant, must control you, wherein such findings are definite and certain in their terms or their import is plain. Where this court in that suit found certainly upon any point that has arisen in this action, its finding must control yours and you must abide by such finding, which, I instruct you, is final and conclusive alike upon the parties hereto, this jury, and this court, and they must be so treated by you under your oath as jurors."

This instruction is erroneous, in that it leaves to the jury the construction of the findings of the circuit court. It was the duty of the court to construe these findings and explain to the jury their force, efficacy, and application to the matters at bar.

6. Instruction No. 6, objected to, is as follows:

"One of the provisions of plaintiff's 'Exhibit B,' which is the instrument executed by L. S. Kelsey, C. A. Dougherty, James Dalton, and others, on the 10th day of October, 1900, reads as folows: '* * and the said L. S. Kelsey shall have the right at any time and all times to pass his own water from other ditches through said ditch, and at any time use his own water therefrom.' I instruct you that the said stipulation is mutual; that is to say, all

parties to that agreement have the right to pass their water through that ditch and no party to that agreement has the exclusive right. Under that stipulation, each party must respect the rights of his co-owners in running his own water through that ditch. This stipulation does not give Mr. Kelsey or Mr. Dalton a right to run such a quantity of water for his own use into that ditch as would deprive any other party to it of the same right. Wherefore, if you find from the evidence that the defendant caused damage to the plaintiff by a disregard of plaintiff's rights to use water therefrom, the defendant would be liable therefor. I instruct you that no party to that agreement has a right to the exclusive control of the ditch mentioned in this agreement, or any part thereof, from its intake on North Powder River to the tap of the last party using water therefrom, but that each party must respect the rights of the others."

This instruction is misleading, in that it seems to leave out of view defendant's prior right to use four feet of the water flowing through the Kelsey-Wilson Ditch. It is true that such right is expressly recognized in other instructions, but there is such an ambiguity here as was calculated to confuse the jury.

7. Instruction No. 9 is as follows:

"As to the Dalton Box, I instruct you that the plaintiff has no right to disturb it or lower the bed of the ditch at that point or above there or to fill in the ditch at the Hutchinson Slough, with more water than can be carried past the Dalton Box. Nor did Mr. Kelsey have any right to dam up that box and prevent any water from flowing through the same if there were other reasonable means available to him whereby he might use his water, if by so damming he would needlessly prevent plaintiff from getting his share of the water. If by opening the bottom of the dam in that box, whereby the water could run through to plaintiff and by turning in enough water additional at the head of the ditch in North Powder River he could have procured a sufficient volume of water to have satisfied his needs and thus have avoided any injury to plaintiff, if plaintiff was injured, it was Mr. Kelsey's duty to have done so and to have allowed water

to go down to plaintiff. I do not mean to say that Mr. Kelsey did put a dam in the Dalton Box; that is a question for you to determine from the evidence."

We think this instruction is correct. It is plausibly contended that a different rule is lain down in the case of *Carnes* v. *Dalton,* 56 Or. 596 (110 Pac. 170) ; but we do not so view that case. In that case it appears that by reason of the dam in Powder River being out of repair it was impossible for Carnes to get the quantity of water he was entitled to by reason of a prior appropriation without repairing or raising the dam. Dalton, who was defendant in that case, claimed the right to use the full amount of his subsequent appropriation, leaving the prior appropriator to rebuild or repair the dam in order to get the share to which he was entitled. The court properly held that Carnes was not required to do this, but, if there was sufficient water flowing at the head of the ditch to supply Carnes, that he was entitled to take it, leaving to the subsequent appropriator the duty of raising the dam, so as to turn more water into the ditch. What is said by the court in reference to the right of Carnes and Kelsey to use the water then flowing in the ditch must be construed as applying to the conditions there found to exist. In the case at bar conditions are different. There is evidence tending to show that there was an abundant supply of water at the head of the ditch for all parties, and if, by simply lifting the headgate, Kelsey could secure his supply, without using that already turned in by plaintiff, he should have done so. Then, if the ditch would not carry enough to give him his four feet of water and also supply Dalton, he should have the right to be first served, or, if what Dalton had previously turned in was all that the ditch would contain, Kelsey would have the right to use the whole of it. We do not understand the instruction to assert any different doctrine.

Sig. 9

It follows from these views that the judgment of the lower court must be reversed with instructions to dismiss the first, second, and third causes of action, and retry the case upon the fourth cause.        REVERSED.

Mr. Chief Justice EAKIN took no part in the decision of this case.