Argued March 26, affirmed April 8, 1919.

# SCHWEDLER v. FIRST STATE BANK OF GRESHAM.

(179 Pac. 671.)

**Fraud—Complaint—Injury to Plaintiff.**

1. Complaint in action for fraud *held* demurrable as failing to show injury to plaintiff.

[As to actions to recover for false representations, see note in 18 Am. St. Rep. 555.]

**Limitation of Actions—Action for Fraud.**

2. An action for fraudulent misrepresentations is governed by the two-year statute of limitations, subdivision 1, Section 8, L. O. L., as to injury to the person or rights of another not arising on contract and not especially enumerated, and not subdivision 4, Section 6, L. O. L., as to actions for injuring personal property.

From Multnomah: Calvin U. Gantenbein, Judge.

Department 2.

Plaintiff appeals from a judgment sustaining a demurrer to his complaint. The action is brought to recover damages for fraud and deceit. The substance of the allegations of the complaint is as follows:

After the averment of the incorporation of the defendant State Bank, it is alleged in paragraph II that plaintiff was the owner, subject to a mortgage of

92 Or.—3

$5,000, of certain real property near Gresham, Oregon, describing the same by metes and bounds.

Paragraph III. That prior to the twenty-fourth day of March, 1914, W. S. Brande was the owner, subject to a mortgage of $16,000, of certain real property particularly describing the same, known as the Cornutt place.

Paragraph IV. That prior to the twenty-fourth day of March, 1914, the defendant, Archie Meyers, was the owner of certain real property, particularly describing the same, containing eighty-five (85) acres, more or less, in Clackamas County, Oregon; and further averred that during all the times mentioned in the complaint, plaintiff was a customer and depositor of the defendant bank, and for a number of years had transacted all his business with the defendant, First State Bank of Gresham; that the defendants were acquainted with his financial condition; that the defendant Archie Meyers was president of the bank, and that plaintiff for a number of years had intrusted his affairs to the defendants and relied upon the honesty and integrity of defendants; that defendants knew that plaintiff's assets consisted of the property described in paragraph II of the complaint, with the stock and chattels thereon, and that the same was mortgaged for the sum of $5,000.

Paragraph VI is as follows:

"That on or about the —— day of February, 1914, for the purpose of inducing the plaintiff to enter into the contract as hereinafter referred to for the purchase of said land described in paragraph III of this complaint, the defendants made to the plaintiff the following representations: That one W. S. Brande, the owner of said property described in paragraph III hereof, desired to sell said property for $21,000.00, and the said Brande would take a mortgage of $14,-000.00 for the unpaid balance; that the plaintiff could

secure said property for the sum of $21,000.00, $7,-000.00 to be paid in cash and the plaintiff and his wife to make and execute a mortgage of $14,000.00 to one Archelaus Cornutt for the balance of the purchase price of said property, the said mortgage of $14,000.00 to be in two notes, one of $2,000.00, at 5 per cent, payable on or before three years after date, and the second note of $12,000.00, at 5 per cent, payable on or before five years after date, and the said mortgage of $14,000.00 to constitute a first lien on the said property; that the defendants had a purchaser for plaintiff's property; that said purchaser would pay therefor the sum of $33,500, the plaintiff to pay to the defendants the sum of $1,500 as commission; that the defendants knowing the financial condition of the plaintiff and knowing that the only way plaintiff could secure $7,000.00 as the first payment on the property described in paragraph III was to mortgage his home, represented to the plaintiff that they would secure for plaintiff a loan of $7,000.00 to become the first lien on plaintiff's property; that they would pay the $5,000.00 mortgage, then the first lien on plaintiff's property, and that plaintiff was to execute and deliver to the First State Bank of Gresham a second mortgage of $5,000.00 on said property; that the defendants further represented to plaintiff that the mortgage of $14,000.00 to be executed by the plaintiff and his wife as above set forth, would be due on or before three and five years respectively, for the reason that plaintiff would be able to pay said mortgage as soon as the transaction for the purchase of the plaintiff's property was consummated.''

In paragraph VII it is alleged that all of said representations were knowingly false and were believed and relied upon by plaintiff, who was induced thereby to enter into the contract thereinafter mentioned, and were made for the purpose of deceiving and defrauding plaintiff.

Paragraph VIII reads thus:

"Contemporaneous with the above mentioned representations, the defendant Archie Meyers negotiated with the said W. S. Brande for the trading of the property described in paragraph III, for 85 acres of land owned by the said Archie Meyers and located in Clackamas county, Oregon, the same being the property described in paragraph IV."

Paragraph IX is as follows:

"That on or about the 16th day of February, 1914, in pursuance to and on account of the said representations and relying upon said representations, the plaintiff instructed the defendants to enter into a contract with the said W. S. Brande on behalf of this plaintiff, wherein and whereby plaintiff agreed to purchase from the said W. S. Brande the property described in paragraph III of this complaint for the sum of $21,000, payable as follows: $7,000 cash and the balance in two notes, one for $2,000, at 5 per cent, interest payable semiannually, payable on or before three years after date, and the second note of $12,000, at 5 per cent, interest payable semiannually, payable on or before five years after date, the said notes were secured by a mortgage in the sum of $14,000, which mortgage was to constitute a first lien on the property described in paragraph III of this complaint; that plaintiff relying upon said representations as aforesaid, further agreed with the defendants that he would sell and instructed the defendants to sell his property to the purchaser had and known by the defendants for the sum of $33,500 and agreed to pay to the defendants as their commission in said transaction the sum of $1,500; that in accordance therewith, on the 18th day of March, 1914, the plaintiff, Ernest Schwedler, and his wife, Helen Schwedler, made, executed and delivered to Charles Johnson their note and mortgage in the sum of $7,000 and which mortgage became a first lien on plaintiff's property; that on the 24th day of March, 1914, the plaintiff and his wife made, executed and delivered to Archelaus Cornutt their notes and mortgage in the sum of $14,000, which mortgage is the first lien on the property described in

paragraph III of plaintiff's complaint, and that on the 24th day of March, 1914, the plaintiff and his wife made, executed and delivered to the First State Bank of Gresham, the defendant herein, their note and mortgage in the sum of $5,000 and which note and mortgage became a second lien on the plaintiff's property; that plaintiff instructed defendants to pay to said W. S. Brande said $7,000.''

It is alleged in paragraph X in effect: That the said representations were false and at the time were known by the defendants to be false and fraudulent in the following particulars; that the defendants did not have a purchaser for plaintiff's property; that the said W. S. Brande had not agreed with the defendants to sell his property for $21,000, payable as specified, but, on the contrary, the said W. S. Brande had agreed to trade his equity in said property for the property of Archie Meyers, described in Paragraph IV, in accordance with the written agreement of February, 1914, between defendant Meyers and Brande nor did they ever intend to pay to W. S. Brande, said $7,000, but, on the contrary, the defendants retained and appropriated for their own use and purpose the said $7,000; that Archie Meyers and W. S. Brande consummated their deal and Meyers for the purpose of defrauding plaintiff requested Brande to make the deed to said property to plaintiff which was executed accordingly.

It is then alleged in paragraph XI:

''That as the result of the execution of the mortgages of plaintiff and relying upon the representation of the defendants, the plaintiff herein paid as interest on the $14,000 until the same was foreclosed, the sum of $770; that plaintiff has paid $840 interest on the mortgage of $7,000; that plaintiff has also paid $11 filing fees, $18 court costs in the foreclosure of the $5,000 mortgage, $75 attorneys' fees in said foreclosure, and $150 attorneys' fees for the foreclosure of

the $5,000 and $14,000 mortgages; that plaintiff, in order to pay the interest on said mortgages, had also to borrow the sum of $1,077 at 8 per cent from the 10th day of March, 1915, and has incurred an obligation thereon in the sum of $129.24; also taxes amounting to $109.92."

That by reason thereof, plaintiff has lost and been wrongfully deprived of the sum of $9,103.19, and asks judgment for damages in that sum.

Defendants demurred to the complaint upon the grounds, first, that it did not state facts sufficient to constitute a cause of action; second, that it appears upon the face of the complaint that the action has not been commenced within the time limited by the Code of Oregon.                                              Affirmed.

For appellant there was a brief and an oral argument by *Mr. Frank T. Collier.*

For respondents there was a brief over the names of *Messrs. Snow & Bronaugh* and *Mr. Carl M. Little,* with an oral argument by *Mr. Earl C. Bronaugh.*

BEAN, J.—1. It is not alleged or claimed by plaintiff that the Cornutt place was not purchased in accordance with the instructions of plaintiff, or that plaintiff directed defendant Meyers to purchase the place on the condition that plaintiff could sell his $35,000 farm, or that the place which he purchased was of any less value than the sum paid therefor. The conveyance of the "Cornutt place" to plaintiff was made on or before March 24, 1914. This action was commenced on September 21, 1916. It might fairly be supposed that a $21,000 farm would yield some rent and profit. It does not appear from the complaint that the income therefrom during the time the land was held by plaintiff was insufficient to pay the interest on the

purchase price and the taxes on the real property and all other expenses connected therewith. It is not shown by the complaint that plaintiff was injured in any way by the transfer of the Clackamas County land to Brande by defendant Meyers instead of paying to Brande the $7,000 and then Brande paying to defendant Meyers $7,000, the price of the defendant Meyers' 85-acre tract. It was simply closing two transactions at one time. In the sale of the Cornutt place to plaintiff, he obtained precisely what he bargained for, and for the agreed price. The other alleged fraudulent representation contained in paragraph VI of the complaint is as follows:

"That the defendants had a purchaser for plaintiff's property; that said purchaser would pay therefor the sum of $33,500.00, the plaintiff to pay to the defendants the sum of $1500.00 as commission."

And in paragraph IX of the complaint:

"That plaintiff, relying upon said representations as aforesaid, further agreed with the defendants that he would sell, and instructed the defendants to sell, his property to the purchaser had and known by the defendants for the sum of $33,500.00, and agreed to pay to the defendants as their commission in said transaction the sum of $1500."

It is not shown by the complaint that the defendants represented that they had a purchaser for plaintiff's farm ready at any time to pay $35,000 therefor. The complaint does not indicate when it was expected plaintiff's property would be sold. The fact that plaintiff executed a mortgage for $7,000 upon his property for the purpose of raising money to make the cash payment upon the Cornutt place, and also executed a mortgage for $14,000, $2,000 of which was due on or before three years from that date, and $12,000 on or before five years from that date, shows that he did not expect

that his Gresham property would be sold at that time, as by the sale of his Gresham land, he would have realized money with which to pay the entire purchase price of the Cornutt property. This also indicates that there was no binding contract for the sale of his property. It is not alleged that the defendants, for any consideration, agreed to sell plaintiff's property or in any way guaranteed the making of such sale.

A fair construction of the complaint indicates that the plaintiff undertook to make a larger deal than he was financially able to carry out. It appears that he entered into this transaction a short time before the beginning of the great world war. He does not state that he was unable to make a sale of his property, nor does he show whether or not the conditions of the real estate market changed soon after his purchase was made. It appears to have been a matter of speculation. If within a short time after the purchase of the Cornutt property the market had been such that he could have sold either that property or his Gresham place for an advance of $5,000 or $6,000, he would have had no cause for complaint. The transaction on the part of the defendants as to the purchase of the Cornutt place according to the complaint appears to have been in the nature of advice. Plaintiff does not show any reason why he did not take a chance upon the speculation the same as any purchaser. The complaint does not state a cause of action.

2. As to the second ground of the demurrer, the position of plaintiff is that he could institute the action within six years under the provisions of Section 6, subdivision 4, L. O. L., which enumerates:

"An action for taking, detaining or injuring personal property, including an action for the specific recovery thereof."

The contention of plaintiff is that the fraud was an injury to property.

This is strictly an action for trespass on the case, and not on contract. The time for the commencement of this action is governed by Section 8, subdivision 1, L. O. L., which specifies two years for beginning

"An action for assault, battery, false imprisonment, for criminal conversation, or for any injury to the person or rights of another, not arising on contract, and not herein especially enumerated."

This was the holding in *Hood* v. *Seachrest*, 89 Or. 457 (174 Pac. 734), an opinion by Mr. Justice BENSON, which was an action for fraud and deceit, and it was held to be governed by Section 8, L. O. L. The decision in that case is decisive of this case: See, also, *Smith* v. *Day*, 39 Or. 531 (64 Pac. 812, 65 Pac. 1055); *Dalton* v. *Kelsey*, 58 Or. 244, 250 (114 Pac. 464).

There was no error in sustaining the demurrer to plaintiff's complaint. Therefore, the judgment of the lower court is affirmed.    AFFIRMED.

McBRIDE, C. J., and JOHNS and BENNETT, JJ., concur.