Argued July 13, affirmed September 21, 1960, argued on rehearing
February 15, reversed; former opinion withdrawn
February 21, 1961

## DOWELL *v.* MOSSBERG

355 P. 2d 624
359 P. 2d 541

*Howard K. Beebe,* Portland, argued the cause for appellant. With him on the briefs were Maguire, Shields, Morrison, Bailey & Kester, Portland.

*Don S. Willner,* Portland, argued the cause for respondent. With him on the brief were Lenon & Willner, Portland.

Before McAllister, Chief Justice, and Warner, O'Connell, Goodwin and Millard, Justices.

## GOODWIN, J.

Paul Mossberg, who is a licensed chiropractor, appeals from a judgment for Beulah Dowell, the plaintiff, following a jury trial in a malpractice action.

In April, 1954, the plaintiff heard a radio commercial inviting the public to The Basic Health Center, operated by the defendant. The establishment employed other chiropractors, numerous "interns", "trainees" and "nurses" as well as other functionaries incident to the operation of a clinic. The evidence revealed that the defendant was in charge of the establishment and that all the personnel so employed

were under his supervision and control. He testified that his time was largely taken up by diagnosis and supervision, although he gave some treatments. The plaintiff repaired in due course to The Basic Health Center, where her history was taken by a person described as a trainee. She was then examined by the defendant.

The examination, according to the defendant's testimony, revealed a woman 56 years old who was suffering a variety of painful and debilitating symptoms, only a few of which are relevant here. The symptoms which the plaintiff claims to have described to the defendant have to do with the plaintiff's cause of action for damages arising out of an alleged failure to diagnose a serious case of diabetes mellitus, which failure the plaintiff claims caused a long delay in receiving proper treatment, with resultant permanent injury.

■ The plaintiff was treated by the defendant between April 8 and June 4, 1954, during which time the diabetes was undetected. She refused to return to the defendant for a July appointment. She received no further treatment until August 1956, when she saw a medical doctor who immediately instituted insulin treatments. Eventually the disease was brought under control. There was evidence from which the jury could have found that the delay in treating the disease was caused by the failure of the defendant to diagnose the condition. There was also evidence that the delay in treatment permitted the course of the disease to advance to the extent that the plaintiff suffered permanent damage to her eyesight as well as other permanent impairment of her health.

With this brief outline of the facts, and before considering the interesting questions of evidence pre-

sented by this appeal, we will consider the principal assignments of error which relate to the defendant's contention that the plaintiff was barred by the statute of limitations.

The plaintiff filed the original complaint in this action on December 28, 1956, which was shortly after she discovered the true nature of her illness, but more than two years after the defendant had stopped treating her. Probably with this situation in mind, her counsel drafted the complaint in the form of an action upon a contract. The complaint alleged the usual elements of a contract and demanded damages for the breach thereof. A general denial was filed January 11, 1957, and the case took its turn on the trial docket. On the eve of trial, an amended answer was filed, over the objection of the plaintiff, alleging the statute of limitations as an affirmative defense.

ORS 12.110 (1) applies the two-year period of limitations to actions for injuries to the person "not arising on contract." The plaintiff demurred to the amended answer on two grounds: first, that the defense of the statute of limitations had been waived by the defendant's failure to interpose the defense by way of a demurrer; and second, that the defense was not available in any event because the action was upon a contract "express or implied." Contract actions may be commenced within six years. ORS 12.070 (1).

Following the practice in Multnomah County, the presiding judge ruled on the demurrer, in this case sustaining it, and the cause came on for trial before another judge to whom it had been assigned.

At each appropriate stage in the proceedings, the defendant attempted to renew his defense of the statute of limitations, and each time the defense was

rejected. All of the rulings which rejected the tendered defense are assigned as error.

Even though the complaint attempted to state a cause of action in contract, the defendant should have raised the defense of the statute of limitations by demurrer, because the facts which were alleged in the complaint described negligence, and the mere fact that the complaint attempted to plead a contract did not change the substance of the cause of action. *Goodman v. Fernald,* 154 Or 654, 61 P2d 1253; *Schwedler v. First State Bk. of Gresham,* 92 Or 33, 179 P 671; *Dalton v. Kelsey,* 58 Or 244, 114 P 464.

■ Under ORS 16.260(7) one ground of demurrer is the showing by the complaint that the action has not been commenced within the time limited by statute. ORS 16.270 requires the party interposing the demurrer to specify the grounds thereof. ORS 16.330 provides that if no objection is taken, either by demurrer or by answer, the objection is deemed waived. An unbroken line of Oregon cases sustains the plaintiff's proposition that when the lapse of time appears in the complaint, as it did in the case at bar, the failure to demur upon that ground constitutes a waiver of the defense of limitations. See, for example, *Ricker v. Ricker, Administratrix,* 201 Or 416, 421, 270 P2d 150; *Eastman, Executrix, v. Crary,* 131 Or 694, 699, 284 P 280; *Spaur v. McBee,* 19 Or 76, 23 P 818.

■ It is equally well settled, and the plaintiff conceded, that the time begins to run with the termination of treatment rather than with the discovery of the malpractice unless fraud or concealment is involved. *Hotelling v. Walther,* 169 Or 559, 130 P2d 944, 144 ALR 205, 227 (also see 174 Or 381, 148 P2d 933); 41 Am Jur 233, Physicians and Surgeons § 123.

We are unable to tell from the record whether the

trial court sustained the demurrer to the amended answer because of the waiver of the defense by failure to demur or because of the plaintiff's second contention, that the action was upon a contract.

■ While we hold that the demurrer was properly sustained because the defense of limitations had been waived, it is appropriate to dispose of the second contention made by the plaintiff, that the action was truly one in contract. Plaintiff alleged, among other things :[①]

"* * * * *

"                                III.

"That in April, 1954, in Portland, Multnomah County, Oregon, plaintiff and defendant entered a contract whereby plaintiff agreed to pay a valuable consideration and defendant agreed to diagnose plaintiff's ailments and give her a course of treatment for the cure of her ailments, and in said diagnosis and treatment to exercise reasonable care and skill.

"                                IV.

"That commencing in April, 1954, pursuant to the terms of the contract hereinbefore alleged, defendant diagnosed plaintiff's ailments and gave plaintiff a course of 24 chiropractic treatments ending in June, 1954.

"                                V.

"That plaintiff paid to defendant the sum of Five Hundred ($500.00) Dollars for said diagnosis and treatment, and has performed all of the conditions of the contract on her part to be performed.

"* * * * *."

The courts which have decided the question whether the action is in tort (trespass upon the case

---

[①] The original complaint alleged that the treatments were given in 1953. This typographical error was corrected in the amended complaint, but would have made no difference insofar as the statute of limitations is concerned.

for negligence) or in contract have not been unanimous. See cases noted in 151 ALR 1027. The majority of the courts, however, have analyzed the relationship between the doctor and patient as one in which the contract of employment is a matter of inducement, and the failure to exercise due care in the practice of the healing arts brings the substance of the action within the law relating to injuries to the person. Notes, 151 ALR 1027, supra; 74 ALR 1256.

■ The accuracy of this analysis of the relationship is nowhere more clearly demonstrated than by the rule that the burden of proving a breach of duty universally requires the plaintiff to produce evidence that the doctor in each case did not exercise that degree of skill and care which an ordinarily skillful practitioner of his particular branch of the healing arts would have exercised in the same community in similar circumstances. 70 CJS 946-954, Physicians and Surgeons §§ 41-45.

Mr. Justice BEAN, writing for this court in an action involving the lawyer-client relationship, said:

"* * * Where one adopts the legal profession, and assumes to exercise its duties in behalf of another for hire, the law imposes a duty to exercise reasonable care and skill, and if an injury results to his client from want thereof he is liable to respond in damages to the extent of the injury sustained. This duty and liability arises from the relation of the parties under the contract, rather than from the contract itself, and at common law the injured party could sue, either in assumpsit, for a breach of the implied promise, or in case, for the neglect of duty: 3 Enc. Pl. & Prac. 107. In the latter instance it is necessary to aver the contract of employment, showing the relation of attorney and client, as a matter of inducement, because without such contract there could be no

duty to the plaintiff, and hence no liability. As stated by Mr. Justice McDonald, in *Emigh v. Pittsburg, etc. R. R. Co.* 4 Biss. 114 (Fed. Cas. No. 4,449): 'When there is a contract, either express or implied, from which a common law duty results, an action on the case lies for a breach of that duty, in which case the contract is laid as mere inducement, and the tort arising from the breach of duty as the gravamen of the action. Thus, if a lawyer or physician is engaged by special contract to render professional services, and if, in the performance of such services, he is guilty of gross ignorance or negligence, an action on the case will lie against him, notwithstanding such special contract.' And Mr. Bliss, after quoting from Chitty that 'the inducement or averment by way of introductory allegation is peculiarly proper where a party is charged upon, or in respect of, the breach of a contract or implied duty resulting from any particular character or capacity of defendant,' says: 'This doctrine is applied to declarations against attorneys, physicians and mechanics for negligence, and against carriers and innkeepers for loss of goods; the contract or possession of the property and the injury being the gist or substance, while the allegations showing the occupation of the defendant, in reference to which the contract was made or the duty arose, show matter of inducement:' Bliss, Code Pl. (3 ed.) § 150. It is clear, therefore, that the averment of the contract of employment does not change the action from one of negligence on account of the failure of the defendants to perform the duty arising out of the relation of attorney and client to an action on contract. * * *" *Currey v. Butcher,* 37 Or 380, 384-386, 61 P 631.

A further reason for this salutary rule is stated in a note in 28 Conn Bar J 346, at 348:

"* * * Except for a few minor variations in the period of the statute, the English Act of 1623 was adopted by most of the early American legis-

latures[①] and it has continued to serve as the basis for all Anglo-American statutes of limitations. In modern society the greater mobility of the population, the increased complexity of evidence and the tremendous increase in contacts creating potential litigation make the need for such limitations greater than at any time in the past.

"The necessity for so limiting actions is particularly apparent in negligence. In this field most of the evidence is that of chance eye witnesses whose memories may fail or be distorted with the passage of time. It is this very nature of the typical evidence in negligence actions that increases the danger of dubious suits. It is more difficult to defeat inconsequential, vexatious or potentially fraudulent claims when they are stale.[②]

"* * * * *

"

---

"① E.g., N. J. REV. LAWS 410 (1820) enacted in 1799.

"② This danger may explain such occasional statutes as ARK. ACTS 1935, No. 135, p 383 (changing accrual of malpractice actions from time of discovery to date of injury)."

We leave open the question whether, within the period of limitations for contract actions, a plaintiff may plead an express contract to effect a cure, or to accomplish a particular result. That question is not before the court in this case. Counsel stipulated that there was no such express contract.

Plaintiff alleged the contract as a matter of inducement, and the balance of her pleading was for damages for negligence. She was seeking damages for discomfort and inconvenience which she claimed resulted from the failure of the chiropractor to detect the presence of diabetes. The substance of her complaint was injury to her person through negligence and nothing more. The action should have been brought within the two-year period provided for actions based upon negligence. However, the defense

having been waived, the case properly went to trial on the merits.

The defendant's remaining assignments of error deal with the propriety of the trial court permitting two licensed doctors of medicine to testify concerning what, in their opinion, would have been proper medical practice in the treatment of the plaintiff.

When the plaintiff first visited the defendant chiropractor, a sample of urine was taken. This sample was found to have a sugar content described by the defendant's notes, made at the time, as "sugar, heavy". Further samples were taken from time to time, but they did not show a heavy concentration of sugar. Two samples showed "sugar, trace". No further attempt was made by the defendant to determine whether or not the plaintiff was suffering from diabetes. Instead the defendant gave the plaintiff some twenty-four treatments of chiropractic art which had nothing to do with diabetes.

Both medical doctors were permitted to testify, over the objection of the defendant, that proper medical practice would have been to run a blood sugar test on the patient in view of the first urinalysis and the other symptoms which the plaintiff swore she described to the defendant at the initial interview. Whether she did or did not describe all her symptoms to the defendant was a jury question.

The plaintiff called as a witness Robert E. Elliott, who is also a chiropractor. Doctor Elliott was permitted to testify that both chiropractors and medical doctors use as references the same standard medical treatises with reference to diabetes. The defendant testified to procedures known to himself from which the jury could have found that practitioners of both

schools use the same general tests in detecting the ailment.

◼ The general rule, as stated by this court in *Sheppard v. Firth,* 215 Or 268, 271, 334 P2d 190, is that in a malpractice action, a physician or surgeon is entitled to have his treatment of his patient tested by the rules and principles of the school of medicine to which he belongs, and not by those of some other school, because a person professing to follow one system or school of medicine cannot be expected by his patient to practice any other, and if he performs a treatment with ordinary skill and care in accordance with his system, he is not answerable for bad results. *Wemett v. Mount,* 134 Or 305, 313, 292 P 93; 41 Am Jur 203, Physicians and Surgeons §§ 84, 85.

An exception to the above rule arises when the methods of treatment for a particular ailment are generally the same in either school. *Wemett v. Mount,* supra.

◼◼ The reason for the general rule which excludes the opinion of an expert in one branch of the healing arts as evidence of the standard of practice to be applied to a member of another profession is that such testimony is irrelevant. Before a defendant can be held liable for malpractice the plaintiff must show that the defendant failed to exercise that degree of skill and care which an ordinary practitioner in the same line of practice in the community would have exercised. It goes without saying that a healer who holds himself out to the public as possessed of a limited variety of science or skill should not be held, in a malpractice case, to a degree of science or skill which he has never claimed.

◼ Obviously, if a practitioner holds himself out as a diagnostician and undertakes to examine all suf-

ferers who present themselves, he is in competition with those who are licensed and recognized as competent to diagnose and treat a wide variety of human ailments. When the practitioner so undertakes, he must exercise the same degree of care and skill as those with whom he seeks to compete. There was ample evidence to support a finding that the defendant held himself out as a general diagnostician.

In the case at bar, the defendant chiropractor claimed competence in the diagnosis of diabetes. He testified that whenever he detected the malady in a patient he referred the patient to a medical doctor. He testified that he had two or three such cases a year. He also described in detail the procedures used by chiropractors in testing for diabetes. The procedures were generally similar to those described by medical doctors. So long as a chiropractor claims competence to diagnose diabetes, there is no reason in law or logic why he should not be held to the same degree of skill and care as medical doctors in the diagnostic procedure. He is not, of course, licensed to treat the disease if he detects it. ORS 684.110 (3).

The patient went to the chiropractor without herself knowing what was ailing her. As noted above, there was evidence that the public was invited to consult the defendant as a diagnostician. Accordingly, the jury was entitled to consider all the evidence in the case which was relevant to the question of ordinary skill and care in the matter of diagnosing the plaintiff's condition. The jury found that the defendant did not exercise that degree of skill and care required of an ordinary chiropractor in the community.

There was no error in permitting the medical doctors to testify. It is true that the record shows a

lack of agreement by the medical and chiropractic experts with reference to certain procedures, but at least one chiropractor testified that a blood sugar test should have been taken. The differences of opinion were not solely between the medical doctors and the chiropractors. The testimony was in such conflict that it presented a jury question.

There being no error, the judgment is affirmed.

## ON REHEARING

## On Rehearing

*Howard K. Beebe,* Portland, argued the cause for appellant. With him on the briefs were Maguire, Shields, Morrison, Bailey & Kester, Portland.

*Don S. Willner,* Portland, argued the cause for respondent. On the brief were Lenon & Willner, Portland.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

### GOODWIN, J.

Following the decision in this case we granted rehearing. As will be seen from the former opinion, the principal controversy was whether an action for malpractice against a physician must be commenced within the period of limitations for personal wrongs not arising out of contract, or within the longer period permitted for actions upon contracts.

■ We held, in accordance with the great weight of authority, that an action for personal injuries resulting from the failure of a physician to exercise due care

in treating his patient must be commenced within the period of limitations for torts. We adhere to that rule.

We also held that the failure of the defendant to interpose the defense of limitations by demurrer constituted a waiver of the defense. As a general proposition, the rule is sound. *Spaur v. McBee,* 19 Or 76, 23 P 818. However, in *Dixon v. Schoonover,* 226 Or 443, 359 P2d 115, decided February 8, 1961, we later noted that the strict rule of *Spaur v. McBee* is not inflexible. There can be cases in which the rule of waiver by failure to demur would have no proper application. *Dixon v. Schoonover* was such a case, and the case at bar is another.

The plaintiff, in an evident attempt to avoid the two-year statute of limitations, stated a cause of action based upon an express contract allegedly entered into with the defendant. The allegations of the complaint make it clear that plaintiff carefully avoided stating a cause of action based on the breach of the duty resting on every physician to use due care.

As noted in the original opinion, the complaint alleged that the plaintiff had performed her part of the contract and that the defendant had breached his. In order to induce a favorable ruling on the plaintiff's demurrer to an amended answer in which the defendant tendered the defense of limitations, the plaintiff elected in open court to prove the contract pleaded in the complaint. Under the practice followed in Multnomah County, the presiding judge rules upon motions and demurrers. An election made during the pleading stage becomes a part of the record and is as binding as an election made upon trial.

The plaintiff's election to prove the contract alleged in the complaint was also an admission in open

court that the defendant could not have raised the defense of limitations by demurrer. Her argument thereafter, in this court, that the defense had been waived by failure to demur was accordingly misleading and inconsistent.

■ The judge who tried the case was apparently unaware of the plaintiff's election to prove a contract. This election has been called to our attention upon rehearing. There was no evidence to prove the contract alleged in the complaint. This failure of proof was called to the trial court's attention. The trial judge ruled that it was not necessary to prove a contract because the case was tried before him as a negligence case, and there was sufficient evidence of negligence to go to the jury. The motion for a judgment of nonsuit was, however, in the record, and its denial was error. The error was preserved by a motion for a directed verdict which should have been granted.

■ As we held in the original opinion, the unspoken contractual relationship between a physician and patient is a matter of inducement in a malpractice action. It is not this contractual relationship which gives rise to the cause of action for malpractice. Failure to exercise due care in the treatment of a patient is a breach of a legal duty which arises, not out of contract, but out of the relationship of physician and patient. It was not this bare legal relationship which the plaintiff undertook to prove after she elected to stand upon the contract described in her complaint. She undertook to prove an express contract. This she failed to do.

Under the circumstances of this case, the failure to direct a verdict for the defendant was reversible error. The former opinion is withdrawn.

Reversed.