Argued and submitted March 27, affirmed July 10, 1985

SULLENGER,
*Appellant,*

*v.*

SETCO NORTHWEST, INC. et al,
*Defendants,*

McNEAL,
*Respondent.*

(27934; CA A32693)

702 P2d 1139

Charles Burt, Salem, argued the cause for appellant. On the brief were J. Michael Alexander, and Burt, Swanson, Lathen, Alexander & McCann, Salem.

J. P. Graff, Portland, argued the cause for respondent. With him on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

In this medical malpractice case, plaintiff, as conservator for her daughter Leona, appeals from a summary judgment for defendant McNeal. On review, we decide whether the pleadings and evidence present issues of fact which should have gone to the jury. *Jones v. Oberg,* 52 Or App 601, 628 P2d 773, *rev den* 291 Or 662 (1981). We conclude, as did the trial court, that the uncontroverted facts show that defendant owed no duty to plaintiff's daughter and that he was entitled to judgment as a matter of law. Accordingly, we affirm.

■ We view the facts in the record on summary judgment in the light most favorable to plaintiff. *Stanfield v. Laccoarce,* 288 Or 659, 665, 607 P2d 177 (1980). Defendant Dierdorff, an osteopath, delivered plaintiff's daughter on December 6, 1977, and attended to routine exams until the child reached the age of six weeks. On November 13, 1978, plaintiff presented the child to Dierdorff with a high fever and other symptoms. He sent the child home, but plaintiff returned with her the next day, and she was admitted to the hospital by Dierdorff with a diagnosis of bronchitis.

Dierdorff frequently referred sick children to defendant, a pediatrician. On November 15, 1978, defendant was examining a sick infant whom he was managing on a referral from Dierdorff. While discussing that patient with Dierdorff, defendant followed him into plaintiff's daughter's room. Dierdorff related that the child had been admitted with bronchial pneumonia, gave an account of her symptoms and stated that chest x-rays were normal and that the child seemed to be improving. Defendant observed the child sitting in a mist tent; she was not in apparent distress. He did not examine her or review charts, nurses' notes, x-rays or other test results. Dierdorff did not seek defendant's opinion or consultation or his approval of the treatments being rendered. As they were leaving the room, Dierdorff asked defendant if he would like to manage the case, and defendant declined, stating that the child appeared to be recovering. The child was discharged on November 16, but returned to the emergency room on November 21, when she was again seen by Dierdorff and sent home. On December 4, 1978, the child was readmitted by Dierdorff with a diagnosis of bronchial pneumonia. On that day, defendant assumed management of the case. The child

had spinal meningitis and has suffered permanent brain damage. The child's mother had been advised by Dierdorff after the child was first admitted to the hospital that defendant would be consulted on the case.

The specific allegations against defendant are that he was negligent:

"(1)    In failing to admit the child for tests on or about the 12th of November, 1978, and subsequent occasions;

"(2)    In failing, in the emergency room, to provide blood tests or tests of mucus to determine the presence of spinal meningitis; and

"(3)    In failing to use appropriate diagnostic procedures to determine the presence of spinal meningitis."

The trial court held that the evidence did not show the existence of a doctor-patient relationship, and that, therefore, defendant owed no duty to plaintiff's child. On appeal, plaintiff does not argue that a duty to treat the child was owed by virtue of a doctor-patient relationship but contends that a duty to act arises if a failure to act would foreseeably result in the injury of another. Plaintiff argues that it is the foreseeability of harm which gives rise to a duty and that the question of foreseeability in a given case is one for the jury to decide.

We cannot agree with plaintiff that defendant had a duty to treat the child or to render care in the absence of a relationship between defendant and the child. The concept of "foreseeability" is applicable to the measurement of the scope or extent of a duty of care, but it does not determine the existence of such a duty. The duty to aid another person arises out of a relationship between the actor and the other. *Cramer v. Mengerhausen,* 275 Or 223, 227, 550 P2d 740 (1976); *see* Restatement (Second) Torts § 314, comment *a.* As the Supreme Court stated in *Dowell v. Mossberg,* 226 Or 173, 190, 355 P2d 624, 359 P2d 541 (1961), the duty of reasonable care owed by a doctor to a patient arises out of the doctor-patient relationship; there is no duty to render care in the absence of such a relationship.

Plaintiff argues that defendant had a relationship with Dierdorff, as a consulting physician, which was sufficient to give rise to a duty to treat this child. The facts, when viewed

most favorably to plaintiff, do not show such a relationship. In his deposition, Dierdorff stated that he did not want defendant's opinion regarding his management of the child's case. He did not seek defendant's opinion of the child's condition. These facts were not contested by plaintiff. The trial court properly concluded that there was no issue of fact as to the existence of a relationship which would give rise to a duty to treat the child.

Affirmed.