Argued and submitted February 23, resubmitted in banc December 4,
reversed and remanded December 17, 1979

# COLVIN,
## *Appellant,*
### *v.*
# FMC CORPORATION,
## *Respondent.*

### (No. 93494, CA 11325)

604 P2d 157

Randolph Slocum, Roseburg, argued the cause for appellant. With him on the brief was Slocum, Poole & Hill, Roseburg.

Elizabeth K. Reeve, Portland, argued the cause for respondent. With her on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe, Gino G. Pieretti and Ridgway K. Foley, Jr., Portland.

GILLETTE, J.

Thornton, J., specially concurring opinion.

## GILLETTE, J.

Plaintiff alleged in her amended complaint[1] that defendant manufactured and sold an insecticide to plaintiff's employer for general use in the employer's plant and that plaintiff suffered harmful physical effects as a result of the use of that insecticide. She alleged that she first noticed those effects on approximately January 4, 1973, but did not discover the cause

[1] From Plaintiff's Amended Complaint:

"I.

"That during the month of January, 1973, and for a long time prior thereto, plaintiff worked as supervising floor lady at the plant of Willamette Cherry Growers, Inc., in Salem, Oregon; and that said employer regularly used insecticides in said plant for the control of miscellaneous insects.

"II.

"That, at all times herein alleged, Agricultural Chemical Division of defendant corporation compounded, manufactured, sold and distributed insecticides of various kinds and descriptions to the retail trade for distribution to the general public; that at various times prior to January, 1973, defendant corporation compounded, manufactured and delivered quantities of said insecticides to its retail outlet at Salem, Oregon, where said outlet sold at retail said insecticides to the general public.

"III.

"That in the year 1972, said Willamette Cherry Growers, Inc., purchased certain insecticides from defendant's retail outlet at Salem, Oregon, which said insecticides were compounded, manufactured and distributed by defendant to its retail outlet at Salem, Oregon, for general use as an insecticide at said plant of Willamette Cherry Growers, Inc., at Salem, Oregon; that the insecticide purchased by said Willamette Cherry Growers, Inc., was known as Pyrenone and contained, among other things, piperonyl butoxide, pyrethrins and petroleum distillates and was sold by said retail outlet of defendant to said Willamette Cherry Growers, Inc., as a general insecticide to be used at the food packing plant of said Willamette Cherry Growers, Inc.

"IV.

"That said Willamette Cherry Growers, Inc., bought said Pyrenone from defendant through one of its servants, agents and employees who was then and there acting within the scope of his employment as such; and that said Pyrenone was then and there delivered by defendant to a servant, agent and employee of said Willamette Cherry Growers, Inc., who then and there paid valuable consideration therefor.

## "V.

"That, by virtue of said sale, defendant warranted to said Willamette Cherry Growers, Inc., and to its servants, agents and employees that said Pyrenone was a good, safe and efficient composition to be used in and about said plant of Willamette Cherry Growers, Inc., as a general insecticide without injury or physical harm to the employees of said Willamette Cherry Growers, Inc., working at said plant.

## "VI.

"That, relying on said warranty, said Willamette Growers, Inc., did, on January 4, 1973, and for several weeks prior thereto, apply said Pyrenone in and about its said plant as a general insecticide; that commencing three or four weeks prior to January 4, 1973, and on January 4, 1973, as a direct and proximate consequence of the application of said composition, plaintiff did then and there become sensitized to some or all of the chemicals therein contained and began to suffer from periorbital swelling of her face, burning sensation to the exposed areas of her skin, fluctuation of her body weight, episodes of edema, loss of vision and difficulty in breathing.

## "VII.

"That the purchase of said Pyrenone, its use by said Willamette Cherry Growers, Inc., and the resulting physical injuries to the plaintiff are the proximate consequence of said warranties of the defendant that said composition was good, safe and efficient to be used as a general insecticide at said food packing plant of Willamette Cherry Growers, Inc., without injury or physical harm to the employees of said Willamette Cherry Growers, Inc., when in fact said Pyrenone was of an inherently poisonous nature to the plaintiff.

## "VIII.

"That plaintiff, since January 4, 1973, has suffered great pain, mental anguish and physical disability on account of the use of said Pyrenone; that plaintiff has become sensitized to practically all forms of insect spray on account of her contact with said composition manufactured and sold by defendant to said Willamette Cherry Growers, Inc.; that she has experienced frequent and countless episodes of the physical problems hereinbefore alleged; and that plaintiff has been permanently injured and disabled and has sustained permanent loss in her wage-earning ability, all to her general damage in the sum of One Hundred Twenty-Five Thousand and no/100 Dollars ($125,000.00).

## "IX.

"That, on account of said injuries to plaintiff, she has been required to undergo medical treatment and to take prescription medicines; and that plaintiff has been unable to pursue a course of gainful employment since her injuries and, on account thereof, has sustained loss of wages in the sum of Ten Thousand Eight Hundred and

until July 15, 1974. She commenced this action on December 19, 1975.

Defendant demurred on the grounds that the action was barred by the applicable statute of limitations and that the complaint did not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer on both grounds. Plaintiff refused to plead over and she appeals from the resulting judgment. We reverse and remand.

The trial court apparently regarded the "strict liability" theory defined in Restatement of Torts 2d, § 402A, as the gravamen of the complaint, and the court accordingly determined that the two-year limitation period of ORS 12.110(1) was applicable.[2]

We conclude that the complaint does state sufficient facts to constitute a cause of action on the theory of strict liability. Paragraph II adequately alleges that defendant is engaged in the business of manufacturing and selling products of the kind in question. Paragraphs III and IV allege that defendant sold plaintiff's

---

no/100 Dollars ($10,800.00) to December 26, 1975, and will continue to sustain loss of income and impairment of wage-earning capacity in the future.

"X.

"That plaintiff did not discover the cause of her physical problems and injuries until July 15, 1974, and that this action is commenced within two years from the date of said discovery."

[2] It is not entirely clear from the complaint whether plaintiff's intention was to plead strict liability, breach of warranty, or both. However, defendant did not move against the amended complaint on the grounds that it contained two causes of action not separately stated, and defendant did not base its demurrer on ORS 16.260(5), which provides that a complaint is demurrable if "several causes of action have been improperly united." Although the trial court's disposition could arguably be affirmed on the grounds that the complaint was demurrable under ORS 16.260(5), we decline to affirm on that basis. The improper union of the two causes of action could have been readily corrected through an amended pleading. Because the trial judge sustained the demurrer, in part, because he concluded that the action was barred by the statute of limitations, plaintiff had no realistic opportunity to replead to correct the curable defect in her pleading which was not a stated basis for defendant's demurrer or for the trial court's ruling.

employer the product which occasioned the alleged injuries. The complaint sufficiently alleges facts from which it can be inferred that the product was expected to and did reach the purchaser without substantial change in the condition in which it was sold. Paragraph VII alleges that the product "was of an inherently poisonous nature to the plaintiff." While not optimally phrased, paragraph VII succeeds in stating that the product was "unreasonably dangerous to the user or consumer." *See Brown v. Western Farmers Assoc.,* 268 Or 470, 477, 521 P2d 537 (1974). The demurrer should not have been sustained on the ground that the complaint failed to state a cause of action.

We also conclude that the complaint pleads facts from which it can be found that plaintiff's cause of action is not barred by the two-year statute of limitations. Paragraph X alleges:

> "That plaintiff did not discover the cause of her physical problems and injuries until July 15, 1974, and that this action is commenced within two years from the date of said discovery."

In *Schiele v. Hobart Corporation,* 284 Or 483, 587 P2d 1010 (1978), the Supreme Court enunciated the principle that, under circumstances of the kind allegedly present here, the limitation period commences running

> "when a reasonably prudent person associates his symptoms with a serious or permanent condition and at the same time perceives the role which the defendant has played in inducing that condition. * * *" 284 Or at 490.

The allegation in paragraph X is sufficient to survive demurrer under the *Schiele* test.

We next consider whether the complaint states a cause of action for breach of warranty, as well as strict liability.

The defendant does not appear to question that plaintiff has adequately pleaded *facts* constituting a

cause of action under the warranty provisions of the Uniform Commercial Code. The question is whether, legally, she *can have* a cause of action under those provisions. Defendant argues that she cannot, first, because her action is, in substance, one for strict liability, and cannot be otherwise characterized by plaintiff consistently with *Dowell v. Mossberg,* 226 Or 173, 355 P2d 624, 359 P2d 541 (1961), and later cases holding that the dominant characteristic of an action rather than the plaintiff's designation is determinative of the action's nature; and, second, because plaintiff lacks the requisite privity with defendant to bring an action for breach of warranty.

The Supreme Court manifestly held in *Redfield v. Mead, Johnson & Co.,* 266 Or 273, 512 P2d 776 (1973), that plaintiffs may elect to proceed under the UCC or § 402 A when injured by products which are both unreasonably dangerous and not as warranted; that by proceeding under the UCC they may avail themselves of the UCC's four-year statute of limitations (ORS 72.7250), rather than the two-year tort statute, and that the rule of *Dowell v. Mossberg, supra,* is inapposite in light of the express statutory right of action and express limitation period provided by the UCC. Defendant argues that the Supreme Court recanted from *Redfield* in *Lindemeier v. Walker,* 272 Or 682, 684-85, 538 P2d 1266 (1975). We understand the language of *Lindemeier* upon which defendant relies as saying no more than that *Redfield* does not modify *Dowell* or make *Dowell* inapplicable to various situations of kinds other than the kind involved in *Redfield* and involved here. We reject defendant's first argument.

Defendant's second argument, that there is no privity of contract between the parties to this action and that privity is a prerequisite to plaintiff's having a cause of action, presents a closer question.

No Oregon case prior to today has construed the warranty provision of ORS 72.3180[3] to extend to parties claiming damages for personal injury who are not in privity with the seller. The Supreme Court has mentioned one aspect of the question in a suit which involved a direct purchaser who was in privity, saying,

> "[This case involves] * * * a direct sale by defendant to plaintiff. Therefore, this case does not require us to consider whether the protection of the Code's warranty provisions *will be extended to other persons in the distributive chain." Redfield v. Mead, Johnson & Co., supra,* 266 Or at 284, n 4. (emphasis supplied.)

As the emphasized material makes clear, the court was recognizing a question concerning a plaintiff who was a remote or ultimate purchaser in the direct distributive chain. Not even mentioned was the problem we face today: a person *outside* the distributive chain who comes in contact with the product.

While the Supreme Court has not spoken to the question of whether privity is a prerequisite to liability in cases of *personal* injury, it has spoken clearly to the same question where only *economic* injury is alleged: privity is necessary. *State ex rel Western Seed v. Campbell,* 250 Or 262, 268, 442 P2d 215 (1968); *Hupp v. Metered Washer Service,* 256 Or 245, 247, 472 P2d 816 (1970); *Davis v. Homasote Company,* 281 Or 383, 386, 574 P2d 1116 (1978).

We see no reason to alter the *Western Seed/Hupp/Davis* rule with respect to personal injuries. The dissent would do so, saying that personal injuries to third parties caused by defective products are more readily foreseeable than is economic injury. Unlike the dissent, we see nothing about personal injuries that makes them inherently more foreseeable. Why is it,

---

[3] A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

for instance, more likely that the presence of the insecticide in this case will activate hitherto unsuspected chemical sensitivities than it was that the substandard subflooring used by the builder in *Davis v. Homasote Company, supra,* would cause economic loss if it failed?

We note, too, that were we to start down the road urged by the dissent we would be required to start all over again determining which *kinds* of products will be included in this new area of liability: Would it be confined to the traditional area of "ultrahazardous" products? *See Wights v. Staff Jennings,* 241 Or 301, 405 P2d 624 (1965) (defective boat motor causing gas explosion). The product involved here—a general insecticide—probably does not fit that category. Would it be applied to the sale of any product found to be "in a defective condition unreasonably dangerous to the user?" *See Heaton v. Ford Motor Company,* 248 Or 467, 435 P2d 806 (1967) (adopting Restatement (Second) of Torts, § 402A). Perhaps not, but the matter is not free from doubt. *See Brendle v. General Tire & Rubber Co.,* 505 F2d 243 (4th Cir 1974).

The legislature, in adopting the Uniform Commercial Code warranty sections, had before it three possible versions of ORS 72.3180, each with a different definition of the class of personally injured third parties to whom the seller's implied warranty of merchantability was deemed to extend. The legislature chose the most limited group—a group which did *not* include persons in the position of the plaintiff here. *See* 1 Anderson, Uniform Commercial Code, § 2-318:1 (2d ed 1970). We decline to expand upon the legislature's policy decision.

Reversed and remanded.

**THORNTON, J.,** concurring in part, dissenting in part.

I agree with the majority that the complaint states sufficient facts to constitute a cause of action on the

strict liability theory, and that the trier of fact can find from allegations in the complaint that the action was timely brought. I therefore join with the majority in holding that the sustaining of the demurrer was error.

However, I am unable to agree with the majority's conclusion that privity of contract between the parties is required for the plaintiff to have a cause of action on a breach of warranty theory for the personal injuries she allegedly sustained.

As the majority notes, the Supreme Court stated in *Redfield v. Mead, Johnson & Co.,* 266 Or 273, 284, n 4, 512 P2d 776 (1973), that it was not necessary in that case to decide "whether the protection of the Code's warranty provisions will be extended to other persons [than the immediate purchaser] in the distributive chain," who seek recovery for *personal* injuries. Thus, the Supreme Court implicitly recognized that its earlier holdings requiring privity in breach of warranty actions involving *economic* loss, do not answer the question which the court did not have to reach in *Redfield* and which is before us today. I therefore do not agree with the majority's suggestion that the Supreme Court's decisions in the economic loss cases are controlling. I also disagree with the majority's suggestion that there is any relevant distinction between situations where the plaintiff is a remote purchaser, as in *Redfield,* and situations like the present one where a person is injured by contact with a product in the possession of the immediate purchaser. Privity is no more present in one situation than the other.

The majority argues that the legislature, in adopting ORS 72.3180, made a policy decision as to the "class of personally injured third parties to whom the seller's implied warranty of merchantability was deemed to extend" (43 Or App at 17), that plaintiff is not within that class, and that this court should not "expand upon the legislature's policy decision" (43 Or

App at 17). The majority apparently overlooks the official comment to UCC Section 2-313 (ORS 72.3130), which provides in part:

" * * * [T]he warranty sections of this Article [ORS ch 72] are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts *or to the direct parties to such a contract.* * * * The provisions of Section 2-318 [ORS 72.3180] on third party beneficiaries expressly recognize this case law development within one particular area. *Beyond that, the matter is left to the case law with the intention that the policies of this Act may offer useful guidance in dealing with further cases as they arise.*" (Emphasis supplied.)

The Comment plainly contemplates that questions such as the one before us are not deemed to have been legislatively answered and are appropriate subjects for judicial decision. In my view, the factors which are relevant to our decision are substantially identical to those which led the courts to reject privity as a prerequisite in actions based on strict liability. The rationale for dispensing with privity in the strict liability context is that dangerous defects in goods place "remote buyers, users, or others foreseeably within the range of danger," *Russell v. Ford Motor Company,* 281 Or 587, 590, 575 P2d 1383 (1978), and the risk should therefore be borne by the manufacturer or seller who introduces the danger into the marketplace.

The same rationale can and should logically extend to manufacturers' and sellers' warranties. If a product will *foreseeably* come into contact with persons other than the direct purchaser and if, because it is not as warranted, it causes *physical injury* to such persons, there is no less reason for permitting the injured person to seek recovery on a warranty theory against the manufacturer or seller who gave the warranty than to proceed under Section 402 A. For example, the manufacturer of the insecticide in this case could well have foreseen that persons other than the purchaser would be exposed to the product which was allegedly

warranted to be safe for use in the purchaser's plant, and that those persons could be injured if the product were not safe when so used. Conversely, *economic* or business loss to third parties would not be as reasonably foreseeable by a seller who warrants a product to the direct purchaser. In sum, I regard the rationale for dispensing with privity when a physically injured plaintiff's theory is strict liability to be equally persuasive when a plaintiff seeks to recover for such an injury on a breach of warranty theory. I therefore reject the majority's implicit rationale that privity should be required in breach of warranty cases involving physical injury for the same reasons privity is required in economic loss cases.

The majority expresses concern that, if third parties were permitted to proceed on a breach of warranty theory for personal injuries, the courts would be required to "start all over again determining which *kinds* of products will be included in this new area of liability." (43 Or App at 717, emphasis in original.) If I shared that expectation, my answer would be that that, among other things, is what courts are for. However, I do not agree that the parade of horribles the majority foresees would follow from the adoption of the position expressed in this opinion.

The test proposed here is that liability for breach of warranty should attach if the maker of a warranty should reasonably foresee that the warranted product will come into contact with third parties and that, if it is not as warranted, it can cause injury to such persons. Under that test, the 'kinds of products' questions which are likely to arise will be largely answered by cases which have addressed analogous questions in the strict liability context. Moreover, the questions the majority anticipates would seemingly be the same whether immediate purchasers or third parties proceeded on a breach of warranty theory to recover for personal injuries. The court system has handily survived breach of warranty actions by physically injured immediate purchasers.

For the foregoing reasons, I respectfully dissent from the majority's conclusion that plaintiff has no cause of action for breach of warranty.

Lee, J., joins in this concurring and dissenting opinion.