Argued and submitted July 22, resubmitted in banc October 7, judgment reversed and cause remanded with instructions to reinstate the second amended complaint against all defendants December 7, 1981, respondents' reconsiderations denied February 4, petitions for review denied March 2, 1982 (292 Or 589)

# SHAUGHNESSY,
### *Appellant,*

*v.*

# SPRAY,
### *Defendant,*
# SMITH, KLINE & FRENCH
# LABORATORIES et al,
### *Respondents.*

## (No. A7905-02395, CA 19275)

637 P2d 182

Dana R. Taylor, Portland, argued the cause and filed the briefs for appellant.

Rick T. Haselton, Portland, argued the cause for respondent Smith, Kline & French Laboratories. With him on the brief were Jerard S. Weigler, and Lindsay, Hart, Neil & Weigler, Portland.

Jeffrey M. Batchelor, Portland, argued the cause for respondent Eli Lilly and Company. With him on the brief were James H. Clarke, James E. Bartels, and Spears, Lubersky, Campbell & Bledsoe, Portland.

RICHARDSON, J.

BUTTLER, J., specially concurring opinion.

## RICHARDSON, J.

Plaintiff appeals the trial court's dismissal of her action against two of the three defendants in this wrongful death case. She contends that the court erred in (1) dismissing her first amended complaint on the ground it was filed without leave of court or the adverse party's consent, in violation of ORCP 23A;[1] and (2) dismissing her second amended complaint as to the two defendants on the ground that it was not filed within the three year limitation period under the wrongful death statute.[2] We reverse.

Plaintiff alleges that her son died on May 23, 1977, as a result of an overdose of a medication prescribed by defendant Spray, a physician, and manufactured by the defendants Smith, Kline & French Laboratories (SK&F) and Eli Lilly & Company (Lilly). Plaintiff's original complaint was filed on May 17, 1979. It named only Spray as a defendant and alleged medical malpractice. Spray answered, and the case was scheduled to be tried in June, 1980. However, on May 3, 1980 (less than three years after her son's death), plaintiff filed her first amended complaint, in which she added SK&F and Lilly as defendants and alleged that those defendants were negligent and that the medication was an unreasonably dangerous product.

Plaintiff did not request or receive leave of the court or the consent of the adverse party, Spray,

---

[1] ORCP 23A provides in part:

"A pleading may be amended by a party once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. * * *"

[2] ORS 30.020(1) provides:

"When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent, for the benefit of the decedent's surviving spouse, surviving children, surviving parents and other individuals, if any, who under the law of intestate succession of the state of the decedent's domicile would be entitled to inherit the personal property of the decedent, may maintain an action against the wrongdoer, if the decedent might have maintained an action, had he lived, against the wrongdoer for an injury done by the same act or omission. The action shall be commenced within three years after the occurrence of the injury causing the death of the decedent."

before filing that amended pleading. On June 11, 1980, SK&F and Lilly moved to dismiss the first amended complaint, contending that it was not filed in compliance with ORCP 23A. On June 13, 1980, plaintiff obtained an order, to which Spray's attorney stipulated, authorizing her to file "an amended complaint." On June 19, 1980, more than three years after her son died, plaintiff filed a second amended complaint, which was identical to the first except that it added the allegation:

> "Plaintiff had no knowledge or reason to know and did not discover the unreasonably dangerous nature of defendants Smith - Kline's and Eli Lilly's product as herein alleged or of the negligence of these defendants as herein alleged until a period of time less than three years from the date of the filing of this complaint against defendants Eli Lilly and Smith - Kline."

■ On June 19, 1980, the trial court granted SK&F's and Lilly's motions to dismiss the first amended complaint. Those defendants then moved to dismiss the second amended complaint against them on the ground that the statute of limitations had run before it was filed. The trial court granted those motions on October 8, 1980, and subsequently entered a final judgment for SK&F and Lilly.[3]

---

[3] The remaining defendant was not affected by the dismissal order, and he remains a party in the trial court. Accordingly, the dismissal does not resolve all issues as to all parties. In accordance with ORS 18.125, the trial court stated in the judgment of dismissal that there was "no just reason for delay," and directed entry of final judgment for the two defendants. After the trial court entered that judgment, we held in *Hill v. Oland,* 52 Or App 791, 629 P2d 867 (1981), and in *Portland Elec. and Plumb. v. Cooke,* 51 Or App 555, 626 P2d 397, *rev den* 291 Or 117 (1981), that we do not acquire jurisdiction over interlocutory appeals if the trial court does not make findings or a statement of reasons to support its conclusion under ORS 18.125 that there is no just reason to delay the entry of final judgment, unless the trial court's "reasons [are] apparent on the record," 52 Or App at 793, and, presumably, are right.

In the present case, there are apparent reasons to support the entry of the judgment. One of the effects of an ORS 18.125 order is to permit an interlocutory appeal. ORS 19.010(2)(e). Given the interrelated nature of plaintiff's claims against the three defendants and the fact that the trial judge's dismissal of the action against the two defendants was not based on the merits of the claims, it is in the interest of judicial efficiency that a final determination be made as to which defendants remain in the case, so that all claims which are triable will be tried either simultaneously or in close temporal proximity. If plaintiff were required to await a final adjudication as to the third defendant before appealing the dismissal of the action against the two defendants involved here, an unjustifiable duplication of effort in the trial court could well result.

█    Plaintiff contends that the trial court erred in dismissing the first amended complaint because the court's and Spray's June 13, 1980, consent to the filing of *an* amended complaint effected an after the fact validation of the filing of *that* complaint on May 3. We do not agree that the June 13 order and stipulation pertained to the first amended complaint. The trial judge's dismissal of that pleading on the ground that it was filed in violation of ORCP 23A is compelling evidence that it was not the *first* amended complaint the court had given plaintiff leave to file.[4]

The decisive issue, therefore, is whether the trial court was correct in dismissing the second amended complaint against SK&F and Lilly. Plaintiff argues that her action is not time-barred, because, as her second amended complaint alleges, she discovered SK&F's and Lilly's negligence and the unreasonably dangerous nature of their products less than three years before she filed that complaint. In *Repp v. Hahn,* 45 Or App 671, 609 P2d 398, *rev den* 289 Or 373 (1980), we held that the time of discovery test for determining when limitation periods commence to run was applicable to that wrongful death case. We stated:

> "In *U.S. Nat'l Bank v. Davies,* [274 Or 663, 548 P2d 966 (1976)], an action for legal malpractice, the court held that the damage occurred when the plaintiff was aware, or should have been aware, that the harm was caused by the defendant. *Cf. Dowers Farms v. Lake County,* 288 Or 669, 607 P2d 1361 (1980). (action under Tort Claims Act)
> "Applying this rule to the present case, the injury occurred no earlier than the summer of 1974, when the mole began to grow. That event was the earliest time when

---

The basic reason for disallowing interlocutory appeals is to prevent the cost and delay of piecemeal appeals and trials. One of the objectives of ORS 18.125, however, is to provide a mechanism for allowing an interlocutory appeal to take place when that will promote the overall efficiency of the judicial process. We conclude that we have jurisdiction over this appeal.

[4] Because we conclude the court did not permit plaintiff to file the first amended complaint through an order issued after the fact *and,* as appeared from the face of *that* complaint, after the limitation period had run, we need not decide whether the court could have done so. Although *State ex rel Kalich v. Bryson,* 253 Or 418, 453 P2d 659 (1969), can be interpreted as suggesting that such an order would have been within the court's power, we question whether ORCP 23A is that flexible.

decedent could have been aware of any harm traceable to defendant.* * *" (Footnotes omitted.) 45 Or App at 676.

Defendant Lilly[5] acknowledges that we so held in *Repp,* but contends that, under ORS 30.020(1), the time of discovery rule should apply only to the time the *decedent* knew or should have known of a defendant's causal involvement and that in no event can an action be brought more than three years after death. Lilly states:

> "Under the wrongful death statute, the decedent's personal representative 'may maintain an action against the wrongdoer, if the decedent might have maintained an action, had he lived * * *.' ORS 30.020(1). The statute then provides that the action must be 'commenced within three years after the occurrence of the injury causing the death of the decedent.' From this language it is apparent that the action is barred if it is filed more than three years after the *decedent* — not the personal representative — reasonably should have discovered the injury and its cause. Since the decedent is in no position to discover anything after death, the limitation period must commence to run no later than the date of death. That is what the statute says, and it is consistent with the purpose of statutes of limitation, i.e., to put to rest old claims. [Citation omitted.]" (Emphasis Lilly's.)

We do not agree that the statutory language compels or even suggests the conclusion that the commencement of the limitation period *can* be deferred until the time the decedent discovers the injury and its cause, *but not* until the time the plaintiff discovers the facts. The provision that the personal representative may maintain an action "if the decedent might [have done so], had he lived," has no bearing on when the statute begins to run. That language simply confers standing to pursue the statutory remedy. We do not agree that the standing provision, alone or in combination with the requirement that the action be "commenced within three years after the injury causing the death of the decedent," indicates that the decedent's, and not the plaintiff's, discovery is the only event other

---

[5] SK&F and Lilly ppeared separately. Our discussion of the time of discovery issue refers to Lilly's arguments rather than SK&F's because, to the extent their arguments on that issue are not overlapping, Lilly's are more comprehensive—or at least more extensive. We note, however, that the briefs of all the parties present through discussions of the issues in the case and we have considered the arguments presented in all of the briefs.

than the actual occurrence of the decedent's injury which can commence the running of the statute.

In addition to its argument based on the statutory language, Lilly also relies on legislative history and on a federal court decision, *Kington v. United States,* 265 F Supp 699 (ED Tenn 1967), *aff'd* 396 F2d 9 (6th Cir), *cert den* 393 US 960 (1968), to support its proposition that the time of discovery rule relates only to discovery by the decedent and cannot under any circumstances defer the commencement of the limitation period beyond the time of death. We find the legislative history argument unpersuasive. The federal decision on which Lilly relies appears to run counter to the weight of authority. Even in the absence of contrary authority, we would decline to follow *Kington.* The time of discovery rule would be a sham in wrongful death cases if it were construed not to apply to discovery by the person entitled to bring the action.

There is a further question, not raised by the parties, which bears on whether the time of discovery rule is applicable to *this* wrongful death action. Plaintiff's cause of action against the physician defendant states a claim for professional malpractice. Malpractice actions against physicians have been subject to the time of discovery rule since *Berry v. Branner,* 245 Or 307, 421 P2d 996 (1966), the holding of which was later legislatively adopted in part. ORS 12.110(4); Or Laws 1967, ch 406, § 1. In *Repp v. Hahn, supra,* although the plaintiff's action was for wrongful death, the underlying injury to the decedent was caused by the defendant physicians' alleged malpractice. Here, however, plaintiff's claims against SK&F and Lilly are for negligence and products liability rather than malpractice.

The remaining questions, therefore, are whether the applicability of the time of discovery rule to a particular wrongful death action is contingent on whether that rule would have applied to an action by the decedent based on the theory relied upon by the plaintiff in the wrongful death action and, if so, whether the negligence and products liability counts alleged here are subject to the time of discovery principle.

The tendency of the Supreme Court and this court in recent years has been to interpret statutes of limitations

as commencing to run at the time of the plaintiff's reasonable discovery of the defendant's causal involvement. *See, e.g., Dowers Farms v. Lake County,* 288 Or 669, 607 P2d 1361 (1980)(Tort Claims Act); *Repp v. Hahn, supra; White v. Gurnsey,* 48 Or App 931, 618 P2d 975 (1980)(defamation). Of greatest immediate relevance, the Supreme Court held in *Schiele v. Hobart Corporation,* 284 Or 483, 587 P2d 1010 (1978), that the time of reasonable discovery principle applied to the accrual of the plaintiff's "products liability cause of action" to recover damages for an occupational disease she allegedly contracted from exposure to the defendant's product. 284 Or at 485. The court stated in *Schiele:*

> "This case necessitates our determining when the two-year statute of limitations contained in ORS 12.110(1) begins to run (the cause of action accrues) on a claim alleging that defendants' negligence caused an occupational disease. * * *" 284 Or at 487.

The decision in *Schiele* can be read as extending the time of discovery rule to both products liability cases and to negligence cases in addition to those alleging professional malpractice. *See also, Colvin v. FMC Corporation,* 43 Or App 709, 604 P2d 157 (1979); *but see* ORS 30.905.[6]

However, it is unnecessary for us to decide whether the time of discovery rule has been or should be extended generally to products liability and "simple" negligence actions, because we conclude that the limitation period under the wrongful death statute, independently of the statute of limitations which would apply to an action for the underlying injury, is subject to the time of discovery commencement rule. We held in *Baxter v. Zeller,* 42 Or App 873, 601 P2d 902, *rev den* 288 Or 253 (1979), that the three-year

---

[6] ORS 30.905(2) provides:

> "A product liability civil action shall be commenced not later than two years after the date on which the *death,* injury or damage complained of occurs." (Emphasis added.)

The statute is not relevant to this case. It was enacted by Oregon Laws 1977, chapter 843, section 3. Section 5 of the same Act provides:

> "This Act takes effect on January 1, 1978, and applies only to causes of action, claims, rights or liabilities accruing after December 31, 1977."

Plaintiff's decedent died on May 23, 1977.

limitation period of ORS 30.020(1), rather than the two-year period of ORS 12.110(4), was applicable to a wrongful death action in which the injury causing the death was the result of medical malpractice. We explained:

> "We note first that ORS 12.110(4) speaks of '[a]n action to recover damages for *injuries* to the person.' (Emphasis added.) By contrast, ORS 30.020(1) applies '[w]hen the *death* of a person is caused by [a] wrongful act.' (Emphasis added.) This is a *death* case, but the applicability of ORS 30.020(1) derives from more than a label.

> "At common law, there existed no civil remedy for wrongfully causing death. Any cause of action arising as a result of an injury to a person was extinguished by the death of the person. *Cowgill, Adm'r v. Boock, Adm'r,* 189 Or 282, 218 P2d 445, 19 ALR2d 405 (1950). At common law, therefore, this proceeding—whether deriving liability from medical malpractice or some other wrongful act—could not have been brought after the patient died. The existence of a cause of action for medical malpractice (and, *a fortiori,* the existence of a statute of limitations for such an action) was irrelevant.

> "The enactment of the wrongful death statute, however, created a new and separate cause of action which could arise if death was caused by *any* wrongful act. Its three-year statutory period was a part of that right. *Richard v. Slate,* 239 Or 164, 396 P2d 900 (1964). *See also Apitz v. Dames,* 205 Or 242, 287 P2d 585 (1955). Full vindication of the right dictates that the limitation found in ORS 30.020(1) be applied in this case." 42 Or App at 877. (Emphasis in original.)

■ *Baxter* holds that the wrongful death statute's limitation period applies to all wrongful death actions and the tort limitation period which would have been germane if death had not resulted does not apply. It follows that the time of discovery rule, which we extended to the wrongful death statute in *Repp,* applies to all wrongful death cases regardless of whether the rule would have applied independently in tort actions based on the underlying injury.

■ Lilly next argues that plaintiff's allegation that she did not discover SK&F's or Lilly's causal involvement until after her son's death is defective in that it is "conclusionary" and "does not affirmatively allege that plaintiff's failure to promptly discover [her son's] injury and its

cause was not attributable to her lack of diligence." Assuming *arguendo* that Lilly is correct, the defect in the pleading would not support the dismissal of the complaint. Had Lilly raised this issue in the trial court in the appropriate way, plaintiff would have had the right to replead. ORCP 21D.

■        Finally, Lilly argues:

"The second amended complaint does not allege that plaintiff acted reasonably when she failed to promptly discover the *injury and its cause.* On the contrary, it appears on the face of the second amended complaint that on May 23, 1977 plaintiff believed that Mr. Shaughnessy's injury and death were caused by his using a product manufactured by Eli Lilly. Plaintiff's allegation that she did not reasonably discover Eli Lilly's alleged negligence or the alleged dangerous nature of its product until some time later is not an allegation that she did not reasonably discover the injury and its cause on the day of Mr. Shaughnessy's death. * * * Plaintiff simply failed to negative her knowledge of Mr. Shaughnessy's injury and its alleged cause on the date of his death, and the court properly dismissed the second amended complaint for that reason. * * *" (Emphasis Lilly's.)

It is true that the complaint shows on its face that plaintiff was aware of the injury at the time her son died and was aware that the injury was attributable to her son's taking the medication prescribed by the physician defendant and manufactured by SK&F and Lilly. However, the relevant inquiry is not whether and when plaintiff knew that the *use of the drug* was involved in her son's death, but whether she was or should have been aware more than three years before joining SK&F and Lilly as defendants that their negligence or the dangerous nature of their products was causal. *See Schiele v. Hobart Corporation, supra,* 284 Or at 490. That question is for the jury.

■        The dismissal of the second amended complaint as to SK&F and Lilly was error.[7]

The judgment for the defendants SK&F and Lilly is reversed and the cause is remanded to the trial court

---

[7] It is unnecessary for us to reach plaintiff's argument that the action was not time-barred because the second amended complaint relates back to her earlier pleadings.

with instructions to reinstate the second amended complaint as to all defendants named therein.

**BUTTLER, J.,** specially concurring.

Although I agree that the judgment below should be reversed, I do so because I think the amended complaint was filed within the three-year statute of limitations for wrongful death. 30.020(1).[1] I disagree strongly with the majority's attempt to rewrite that statute; if disposition of this case depends on the meaning of the statute, I would affirm.

## I

First, my reasons for disagreement. The majority appears to assume that upon the "wrongful" death of a person, a personal representative pops into being like a genie, and the statute of limitations commences to run only from the time the personal representative discovers, or reasonably should have discovered, that the negligence of the defendant caused the decedent's death. Of course, no genie does appear, either from an urn or from the firmament. Someone must take steps to have a personal representative appointed and there is no requirement that one be appointed; neither is there a time limit within which one may be appointed.

The majority apparently would read the statute to mean that until there is a personal representative duly appointed, the limitation period does not commence to run; apparently, it would be tolled. For example, if the surviving spouse, a person for whose benefit an action may be brought, has all of the information necessary to cause the limitation period to commence, but does nothing until several years after the death when she is appointed the personal representative, when does the statute commence? If

---

[1] ORS 30.020(1) provides:

"When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent, for the benefit of the decedent's surviving spouse, surviving children, surviving parents and other individuals, if any, who under the law of intestate succession of the state of the decedent's domicile would be entitled to inherit the personal property of the decedent, may maintain an action against the wrongdoer, if the decedent might have maintained an action, had he lived, against the wrongdoer for an injury done by the same act or omission. The action shall be commenced within three years after the occurrence of the injury causing the death of the decedent."

the majority's answer is that the surviving spouse's knowledge is the knowledge of that person as the personal representative, it ignores the separate legal status of a fiduciary. But even if we pass that problem, the statutory beneficiaries could have anyone, not disqualified under ORS 113.095, appointed who has no knowledge of the defendant's negligence in causing the decedent's death. In that case, the limitation period would not commence until that unknowledgeable personal representative discovers, or reasonably should have discovered, defendant's negligence.

Furthermore, suppose the personal representative, although promptly appointed, is a corporate fiduciary. To whom within that fictitious entity do we look to determine when he, she, they or it reasonably should have known of defendant's negligence? Would it have an affirmative fiduciary duty to investigate the circumstances of the decedent's death? Would the standard be the same for a corporate fiduciary as for a member of decedent's family in determining when it should reasonably have discovered defendant's negligence? If so, may it be held liable for breach of fiduciary duty if it failed to do so within the time limit?

Much more could, but need not, be said concerning the mischief which would result from the majority's rewrite of the statute. It is apparent that the legislature recognized the problems and enacted the statute as it did, limiting the period within which to bring the action to "three years after the occurrence of the injury causing the death of the decedent." ORS 30.020(1). Allowing three years to bring an action for a cause which would, but for the death of the injured person, be required to be brought within two years (ORS 12.110) is consistent with the one-year extension of the statute of limitations generally applicable to claims against the decedent's estate which are not barred on the date of death of the decedent. ORS 115.215.

We should not attempt to rewrite ORS 30.020(1); if it is to be rewritten to incorporate the majority's view, it needs major changes and the job should be left where it belongs — with the legislature.

## II

Second, there is no need to reach the question decided by the majority. Any defect in the first of the

amended complaints joining the corporate defendants was cured, and it was timely.

The procedural history of this proceeding is necessary to understand the problem presented. On May 17, 1979, plaintiff filed a wrongful death action against defendant Spray, alleging that the death of her son on May 23, 1977 was caused by the medical malpractice of Dr. Spray in prescribing the drug, propoxyphene, when he knew or should have known of its potential fatal toxicity; in prescribing that drug when plaintiff's son had a history of drug abuse, and in failing to warn plaintiff's son of the potential fatal toxicity of propoxyphene. Spray filed an answer, and the action was scheduled to go to trial on June 23, 1980.

On May 3, 1980, which everyone involved assumes to have been within the three-year period authorized by ORS 30.020(1) to commence a wrongful death action, plaintiff filed an amended complaint (first amended complaint) which added the corporate defendants as party defendants, alleging negligence on their part in one or more of five particulars. The gist of those particulars was that the corporate defendants failed to provide the medical profession with adequate information concerning the use of propoxyphene, including all relevant hazards, contraindications, side effects and precautions under which practitioners may prescribe the drug safely. Plaintiff neither requested nor received leave of the court or the consent of the adverse party, Spray, to file the pleading.

On June 11, 1980, the corporate defendants moved to dismiss the amended complaint on the grounds of "insufficiency of summons or process" or the service thereof, contending that plaintiff had not complied with ORCP 23A in that she had not obtained leave of court or written consent of the adverse party before filing it. On June 13, 1980, plaintiff obtained an order, to which Spray's attorney stipulated, authorizing the filing of "an amended complaint" joining the corporate defendants. On June 19, 1980, more than three years after plaintiff's son's death, plaintiff filed a second amended complaint, which was identical to the first amended complaint, except for an allegation that plaintiff had discovered her claims against the corporate defendants within three years of the filing date.

On June 19, 1980, the trial court granted the corporate defendants' motions to dismiss the first amended complaint. Thereafter, each of the corporate defendants filed motions to dismiss the second amended complaint, each contending that the action against it was not commenced within the time limited by law. Each of those motions was granted on October 8, 1980, followed by a judgment entered for both corporate defendants on October 20, 1980.

In this court, plaintiff contends that: (1) the trial court erred in dismissing the first amended complaint; (2) even if that amended complaint was properly dismissed, the second amended complaint, under the provisions of ORCP 23C, related back to the date of the filing of the original complaint, and (3) even if the first two contentions fail, the statute of limitations provided by ORS 30.020(1) had not run as to the corporate defendants because, as alleged in the second amended complaint, plaintiff did not discover those defendants' negligence until sometime within the three years immediately preceding the filing of the second amended complaint.

I consider the first contention dispositive. Assuming that ORCP 23A[2] applies to an amendment to a complaint which does not change the claim against the existing

---

[2] ORCP 23A provides:

"A pleading may be amended by a party once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. Whenever an amended pleading is filed, it shall be served upon all parties who are not in default, but as to all parties who are in default or against whom a default previously has been entered, judgment may be rendered in accordance with the prayer of the original pleading served upon them; and neither the amended pleading nor the process thereon need be served upon such parties in default unless the amended pleading asks for additional relief against the parties in default."

That rule does not appear to contemplate an amended complaint which *adds* party defendants. In fact, the only part of ORCP 23 which expressly deals with an amendment affecting a party other than the one or ones named originally is Rule 23C, and that rule provides for relation back, under certain circumstances, where the party is "changed."

If ORCP 23A does not apply here, there does not appear to be any rule which clearly covers this situation. However, ORCP 30 provides that parties may be

defendant, but only asserts claims against additional defendants added by the amendment, plaintiff was required to obtain either leave of the court or the consent of the existing defendant, Spray. She did not obtain either prior to filing and serving her first amended complaint. She did, however, obtain both after the fact, but before the motions to dismiss that amended complaint were heard.

Plaintiff contends that the corporate defendants do not have standing to raise the question of whether the first amended complaint was duly filed; they could not have prevented it over Spray's consent. I think there is substantial merit to that contention, and the doctor's subsequent stipulation to the order permitting the filing of an amended complaint may be treated as a ratification of the filing of the first amended complaint. In any event, clearly he is not complaining. However, even if we treat the serving and filing of that amended complaint as amounting to an "insufficiency of summons or process," as defendants contend, I do not think the insufficiency requires dismissal.

The corporate defendants contend that the first amended complaint was a complete nullity, relying on *Alery v. Alery, Jr., et ux.,* 193 Or 332, 238 P2d 769 (1951), and *Schmitt et ux v. Culhane et al,* 223 Or 130, 354 P2d 75 (1960). In *Alery,* the defendants filed, without leave of court, a second amended answer, a copy of which was mailed to the plaintiffs' attorney, but not served upon the plaintiffs as then required by law. Plaintiffs did not file a reply to that second amended answer and defendants moved for judgment on the pleadings, which the trial court granted.

On appeal, the Supreme Court reversed the judgment for defendants on the ground that the trial court abused its discretion in not permitting plaintiff to file her reply after defendants filed their motion for judgment on the pleadings. In discussing the filing of the second amended answer without leave of court, the court said:

---

dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action. That rule also provides that misjoinder of parties is not ground for dismissal. The corporate defendants here do not contend they could not be joined. *See* ORCP 28.

"In the case at bar the record not only fails to show the permission of the court to file the second amended answer, but counsel for defendants in the argument on the appeal admitted that such right was never secured from the court." 193 Or at 341.

That language clearly suggests that if defendants had obtained leave of court subsequent to filing the second amended answer, the defect would have been cured. In any event, the case does not go so far as defendants contend, because the Supreme Court's ultimate disposition was to permit the plaintiffs to file a reply to the second amended answer, even though that pleading had not been properly filed or served. It was not treated as a nullity.

In *Schmitt,* at the opening of trial defendants requested leave of court to file a third further and separate answer and defense, to which plaintiffs objected. The court did not grant permission. The Supreme Court pointed out that the amendment was never legally filed, because the trial court had not granted defendants' motion for leave to do so. Neither of those cases disposes of the question presented here.

A more analogous situation was presented in the later case of *State ex rel Kalich v. Bryson,* 253 Or 418, 453 P2d 659 (1969), a mandamus proceeding in which the relators were the defendants in the underlying action. In the underlying lawsuit, the summons served on the defendants shortly before the statute of limitations had run was fatally defective. After the statute of limitations had run, the defendants appeared specially and moved to quash the summons on the ground that it was void. Plaintiff then filed a motion to amend the summons to correct the defect. Plaintiff's motion was allowed, and the motion to quash was denied.

Thereafter, the defendants, as relators, filed an original proceeding in mandamus in the Supreme Court to require the trial judge to vacate his order denying the motion to quash and allowing the plaintiff's motion to amend the summons. The Supreme Court conceded that a legally sufficient summons was essential to the acquisition of jurisdiction over the person. However, it considered the question to be whether failure to designate the time within

which the defendant must appear was so substantial a defect that it rendered the summons inadequate for that purpose. The court pointed out that the purpose of a summons is to give the defendant notice of an action against him, the name of the court in which the complaint is filed, the names of the parties, the relief sought and the defendant's obligation to answer.

The court went on to say that the failure of the summons to advise defendant of the time within which he must appear resulted in the court's not having jurisdiction to enter a default judgment against the defendant. The court then stated:

> "But, it does not follow that a failure to give such notice to the defendant deprives the court of jurisdiction for all other purposes. If the court's action does not deprive the defendant of an interest which deserves legal protection, there is no reason for concluding that the court does not have jurisdiction. [Footnote omitted.] We do not think that the failure to give relators notice of the time within which to appear or answer invaded any interest of theirs worthy of protection to such an extent that the court did not have jurisdiction to entertain a motion to amend the summons. [Footnote omitted.]
>
> "For the purpose of preparing their defense, relators had as much information concerning the action brought against them as if the summons were perfect in form. The defect in the notice involved in the present case could harm the relators only if plaintiff's delay in amending the summons deprived them of the opportunity to take whatever action was necessary for the defense of their case." 253 Or at 422-23.

By that reasoning, the court concluded that the trial court had jurisdiction to cure the defect in the summons after the fact.

The same rationale applies here. The corporate defendants had notice of plaintiff's claims against them by virtue of the first amended complaint the same as if defendant Spray had consented to the filing of that complaint beforehand. They could not have prevented the filing of that complaint if defendant Spray had consented. The Court had jurisdiction of the cause; it was then pending before the court. Accordingly, the court had authority to entertain Spray's subsequent consent and to enter the

stipulated order authorizing the filing of an amended complaint adding the two corporate defendants. Here, unlike *Alery,* the plaintiff did obtain both defendant Spray's consent and a court order authorizing the filing of an amended complaint. I read *Kalich* to hold that a technical defect may be cured after the fact and after the statute of limitations has run to prevent plaintiff's claim from being time-barred, so long as the court has jurisdiction to cure it. Here, the court had jurisdiction and the defect was cured after the fact.

Accordingly, I would hold that the first amended complaint should not have been dismissed and would reverse the judgment for the corporate defendants and remand the case to the trial court to reinstate that amended complaint.

Roberts, J., Warren, J., and Van Hoomissen, J., join in this specially concurring opinion.